Karen **WILLIAMS,** individually and on behalf of all others similarly situated, Plaintiff,

v.

**U.S. BANK NATIONAL ASSOCIATION** and Does 1–50, inclusive, **Defendants.**

**No. CIV. S–12–1907 LKK/EFB.**

United States District Court, E.D. California.

June 20, 2013.

Matthew C. Helland, Nichols Kaster & Anderson, LLP, San Francisco, CA, for Plaintiff.

Hali Michelle Anderson, Samantha D. Hardy, Sheppard, Mullin, Richter & Hampton LLP, San Diego, CA, for Defendants.

## ORDER

LAWRENCE K. KARLTON, Senior District Judge.

Plaintiff seeks conditional certification of a class of current and former mortgage underwriters employed by defendant U.S. Bank. Defendant has requested that the court seal every single page of most of the substantive exhibits that plaintiff has submitted in support of the conditional certification motion.[1] For the reasons that follow, plaintiff's conditional certification motion will be granted, and defendant's request to seal will be denied for the most part, and granted in part.

## I. BACKGROUND

Plaintiff Karen Williams is a former mortgage underwriter for defendant U.S. Bank ("the bank"). Plaintiff alleges that the Bank "suffered and permitted" Williams to work overtime hours. Complaint (ECF No. 1) ¶ 9. However, the bank did not pay her overtime wages, even though, Williams alleges, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.,* required the bank to do so. *Id.*

The FLSA generally requires an employer to pay overtime wages for employees working more than 40 hours in a week. 29 U.S.C. § 207. The overtime provisions do not apply however, to "exempt" employees,

including "any employee employed in a bona fide ... administrative ... capacity." 29 U.S.C. § 213(a)(1). In this case, defendant classified plaintiff as exempt pursuant to the "administrative employee" exemption. *See* Defendant's Opposition to Conditional Certification ("Opposition") (ECF No. 33) at 6.[2]

Plaintiff seeks to represent a nationwide class of U.S. Bank mortgage underwriters, and moves here for conditional certification of the class pursuant to 29 U.S.C. § 216. Plaintiff asserts that the proposed class members were together the victims of a single policy of defendant's, namely, that although mortgage underwriters were all entitled to overtime wages for overtime work, defendant uniformly mis-classified them as "exempt" so as to deny them the overtime wages they were owed. *See* Memorandum in Support of Motion For Conditional Certification and Judicial Notice ("Motion") (ECF No. 28) at 7. Plaintiff claims that the mortgage underwriters performed the same job duties; were uniformly classified (or misclassified), as administrative employees who were "exempt" from the overtime compensation laws; were paid in a similar manner; and commonly worked overtime hours without receiving overtime wages. *See* Motion at 6.

Defendant opposes the motion on the grounds that there are conflicting declarations from the underwriters themselves—those submitted by plaintiffs versus those submitted by defendant—about what their job duties are, what authority they have to approve or deny loans, and what is the basis for evaluating their job performance. *See* Defendant's Mem. of Points and Authorities in Opposition (ECF No. 33) ("Opposition") at 10–12. Defendant also seeks to exclude plaintiff's own declaration on the ground that it is "contrary to her deposition testimony," and therefore, "inherently unreliable." *See* Opposition at 9–10.

---

1. To its credit, defendant has not requested the sealing of its Form 10–K, a public document, nor the mortgage underwriter job description. Nor has it requested the sealing of procedural documents (proposed notice forms, postcard and envelope), and materials taken from public websites.

2. The page numbers refer to the CMF/ECF page numbers, not the internal document page numbers.

## II. STANDARDS

### A. Sealing Documents

■ Courts have long recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (denying release of the "Nixon tapes" that were played in open court and entered into evidence). "This right extends to pretrial documents filed in civil cases." *Estate of Migliaccio v. Allianz Life Ins. Co. (In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Lit.)*, 686 F.3d 1115, 1119 (9th Cir.2012) (*per curiam*). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir.2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir.2003)).[3] In order to overcome this strong presumption, a party seeking to seal a judicial record must articulate justifications for sealing that outweigh the historical right of access and the public policies favoring disclosure. *See id.* at 1178–79.

■ The Ninth Circuit has determined that the public's interest in non-dispositive motions is relatively lower than its interest in trial or a dispositive motion. Accordingly, a party seeking to seal a document attached to a non-dispositive motion need only demonstrate "good cause" to justify sealing. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir.2010) (applying "good cause" standard to all non-dispositive motions because such motions "are often unrelated, or only tangentially related, to the underlying cause of action") (internal quotation marks and citation omitted), *cert. denied*, 562 U.S. ——, 131 S.Ct. 900, 178 L.Ed.2d 747 (2011). "The party seeking protection bears the burden of showing specific prejudice or harm will result if no [protection] is granted." *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11

(9th Cir.2002). That party must make a "*particularized showing* of good cause with respect to any individual document." *San Jose Mercury News, Inc. v. U.S. Dist. Court, N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir.1999) (emphasis added). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir.) (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir.1986)), *cert. denied*, 506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992).

■ Conversely, "the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events.'" *Kamakana*, 447 F.3d at 1179 (quoting *Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nev.*, 798 F.2d 1289, 1294 (9th Cir.1986)). Accordingly, a party seeking to seal a judicial record attached to a dispositive motion or one that is presented at trial must articulate "compelling reasons" in favor of sealing. *See id.* at 1178. "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* at 1179 (citing *Foltz*, 331 F.3d at 1136). "In general, 'compelling reasons' ... exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* (citing *Nixon*, 435 U.S. at 598, 98 S.Ct. 1306).

Under the "compelling reasons" standard, a district court must weigh "relevant factors," base its decision "on a compelling reason," and "articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Pintos*, 605 F.3d at 679 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir.1995)). "[S]ources of business infor-

---

**3.** Materials traditionally kept secret include grand jury transcripts. *See Times Mirror Co. v. U.S.*, 873 F.2d 1210, 1213 (9th Cir.1989) ("Traditionally, for example, grand jury proceedings have been kept secret even though they are judi-

cial proceedings which are closely related to the criminal fact-finding process") (rejecting press access to search warrant materials in an ongoing criminal investigation).

mation that might harm a litigant's competitive standing" often warrant protection under seal. *Nixon,* 435 U.S. at 598, 98 S.Ct. 1306.

## B. Conditional Certification.

■ The FLSA allows a "collective action" to be brought on behalf of "similarly situated" employees. 29 U.S.C. § 216(b); *Kress v. PwC,* 263 F.R.D. 623, 627 (E.D.Cal.2009) (Karlton, J.). The determination of whether prospective class members are similarly situated is not made under the analysis required for Fed.R.Civ.P. 23 class actions. *Kress,* 263 F.R.D. at 627.[4] Rather, the courts generally apply a two-tiered approach. *Kress,* 263 F.R.D. at 627.[5]

■ Under the two tiered approach, the first tier is the "notice stage," which asks whether the employees are sufficiently "similarly situated" that notice should be sent to prospective plaintiffs under *Hoffmann–La Roche v. Sperling,* 493 U.S. 165, 110 S.Ct.

482, 107 L.Ed.2d 480 (1989). *Kress,* 263 F.R.D. at 627. It is plaintiff's burden to show that the class should be conditionally certified. *See id.* Plaintiff meets her burden by providing substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan.[6] *Id.* In determining whether plaintiff has carried her burden, the court need not consider evidence provided by defendants. *Id.,* at 628. The determination is made based on a fairly lenient standard.[7] *Id.*

To make her showing, plaintiff must provide some allegations or evidence "indicating that prospective class members share similar job duties." *Id.,* at 630. Accordingly, whether the mortgage underwriters are "substantially similar" must be evaluated in light of the issues raised by plaintiff's particular FLSA claim. In this case, as noted, plaintiff's claim is that defendant has mis-classified the mortgage underwriters as "exempt"

---

4. *Accord, McElmurry v. U.S. Bank Nat'l Ass'n,* 495 F.3d 1136, 1139 (9th Cir.2007) (noting that Section 216(b) notice "has less to do with the due process rights of the potential plaintiffs").

5. There appears to be no definitive guidance on the use of the two-tiered approach from the Supreme Court or Ninth Circuit. However, this court has adopted the two-tiered approach, as have Courts of Appeals across the country. *See Kress,* 263 F.R.D. at 627; *Zavala v. Wal Mart Stores Inc.,* 691 F.3d 527, 536 (3rd Cir.2012) (The "two-tier approach, while nowhere mandated, ... appears to have garnered wide acceptance. We implicitly embraced this two-step approach, and we affirm its use here"); *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 916 (5th Cir.2008) ("More specifically, collective actions typically proceed in two stages. First, the plaintiff moves for conditional certification of his or her collective action. The district court then decides, usually based on the pleadings and affidavits of the parties, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying a collective action. Second, once discovery is complete and the employer moves to decertify the collective action, the court must make a factual determination as to whether there are similarly-situated employees who have opted in. If so, the collective action may proceed, and if not, the court must dismiss the opt-in employees, leaving only the named plaintiff's original claims") (citations omitted); *White v. Baptist Memorial Health Care Corp.,* 699 F.3d 869, 877 (6th Cir.2012) ("District courts determine whether plaintiffs are similarly situated in a two-step pro-

cess, the first at the beginning of discovery and the second after all class plaintiffs have decided whether to opt-in and discovery has concluded"); *Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095, 1105 (10th Cir.2001) ("We find no error on the part of the district court in adopting the ad hoc approach") *cert. denied,* 536 U.S. 934, 122 S.Ct. 2614, 153 L.Ed.2d 799 (2002). *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1260–61 (11th Cir.2008), *cert. denied,* 558 U.S. 816, 130 S.Ct. 59, 175 L.Ed.2d 23 (2009).

6. Although plaintiff has the burden here of showing that she and the other mortgage underwriters were the victims of a single decision, policy or plan, the court keeps in mind that it is the defendant that will bear the burden of proof on the ultimate question of whether the mortgage underwriters were properly classified as "exempt." *Christopher v. SmithKline Beecham Corp.,* 635 F.3d 383, 391 (9th Cir.) ("The employer always has the burden of showing the exemption applies to its employee"), *cert. denied,* 565 U.S. ——, 132 S.Ct. 760, 181 L.Ed.2d 480 (2011).

7. The certification, which is within the court's discretion, is "conditional," because it may be revisited once the case is ready for trial. *Kress,* 263 F.R.D. at 628. If the court finds initial certification appropriate, it may order notice to be delivered to potential plaintiffs. *Hoffmann–La Roche,* 493 U.S. at 172, 110 S.Ct. 482. We are at the first stage. The second stage is typically triggered by an employer's motion for decertification, and usually comes at the conclusion of discovery.

administrative employees.[8] Accordingly, the question to be decided on this motion is whether plaintiff's evidence indicates that the propriety of the classification may be determined on a collective basis. *Id.* It is not sufficient to show that defendant's alleged mis-classification affected all proposed class members. *Id.* On the other hand, plaintiff need not conclusively establish that collection resolution is proper, because defendant will be free to revisit this issue at the close of discovery. *Id.*

▮ Application of the administrative exemption is fact specific. *Id.*; 29 C.F.R. § 541.2 ("The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part"). In order to qualify for the exemption, "an employee's 'primary duty' must be the performance of exempt work," and the determination of an employee's "primary duty" is "based on all the facts in a particular case." 29 C.F.R. § 541.700(a). However, the need to examine the facts of an employee's work does not categorically preclude collective determination of exemption. In cases concerning exemption, courts have found collective certification appropriate where evidence indicates that prospective class members' job duties were substantially similar. *Id.*

## III. ANALYSIS

### A. Motion to Seal.

Defendant moves to seal the following documents, attached as exhibits to the Declaration of Matthew C. Helland in Support of Motion for Conditional Certification:

1. **The *entirety* of Exhibit 1 (January 17, 2013 Deposition Transcript Excerpts of Alan Leimkuehler).**

#### a. Description of the exhibit.

▮ Exhibit 1 consists of excerpts of the January 17, 2013 deposition transcript of Alan Leimkuehler. These excerpts, which defendant asks this court to seal in their entirety, include: the title pages; the exhibit list; the page containing nothing more than Mr. Leimkuehler spelling his name and acknowledging that he is there for a deposition; the jurat page and the Reporter's Certificate page.[9] Also included in the blanket Request To Seal are: a discussion of information contained in defendant's Form 10–K, a public document filed with the U.S. Securities and Exchange Commission;[10] a discussion of positions and departments within the bank;[11] discussions of the specific job duties of the mortgage underwriters;[12] training of mort-

---

**8.** Technically, plaintiff's claim is only that defendant misclassified her and her fellow mortgage underwriters as "exempt," since defendant did not disclose until it filed its Opposition that the specific exemption it claimed was the "administrative" exemption.

**9.** The court lists these absurdities to emphasize the fact the defendant made *no effort at all* to seal only those portions of the substantive exhibits that it actually wanted to protect as confidential. Counsel should keep in mind that their Request To Seal is subject to the requirements, and the sanctions, of Rule 11, which applies to "*Every* pleading, written motion, and other paper" filed with this court. Fed.R.Civ.P. 11(a) (emphasis added); *see also*, E.D. Cal. R. 110 (sanctions for noncompliance with rules).

**10.** Meanwhile, plaintiff filed the Form 10–K itself as an exhibit, without any objection or request to seal (which would be equally frivolous), by defendant.

**11.** During the deposition discussion on positions and departments, counsel for defendant interjected that "This conversation about U.S. Bank's

methods to prevent fraud and stuff is confidential to the bank, so can we mark this portion of the transcript as confidential?" Tr. at 40. She goes on to state: "To the extent that it's gone beyond just identifying positions and extending the steps that the bank takes, that's considered confidential." *Id.* This brief interjection indicates that at the time of the deposition, defendant did not consider it to be confidential simply to identify which positions existed at the bank, although, not surprisingly, counsel wanted to protect any detailed discussion of fraud prevention tools. Having apparently abandoned the sensible position it took at the deposition, the bank now seeks to seal even discussions of what departments and positions exist at the bank.

**12.** Yet, defendant itself has submitted the Mortgage Underwriter Job Description, setting forth a "General Summary," a list of "Essential Functions," a "Specification[]" of the "general nature and level of work," and a "Leveling Guide" that distinguishes the three levels of mortgage underwriter. *See* Exh. C. (ECF No. 33–2) to the March 14, 2013 Decl. of Hali M. Anderson ("Anderson Decl.") (ECF No. 33–1).

gage underwriters;[13] general statements of mortgage underwriters' compensation and incentives;[14] discussions about employee discipline; performance expectations for mortgage underwriters;[15] and whether mortgage underwriters are classified as "exempt" and whether they are eligible for overtime.[16]

Unsurprisingly, plaintiff opposed this astoundingly broad request to seal the entirety of most of plaintiff's substantive exhibits.

### b. Request to seal Exhibit 1.

 Defendant's request to seal will be denied, both on legal grounds and on factual grounds. As a legal matter, defendant's request to seal is improper under the standards articulated by the Ninth Circuit. In its Request To Seal, defendant asserts that the documents ("95 pages total"), "*all* relate to U.S. Bank's internal underwriting and/or compensation policies, procedures, and practices." Request To Seal (ECF No. 23–1) at 3

> Defendant has also submitted deposition transcript excerpts and declarations that set forth, in some detail, the specific job duties of the mortgage underwriter. *See, e.g.,* Exh. D (Adams deposition) (ECF No. 33–2 at 20–26)(describing, *among other things, the impact of specific credit* information on the loan decision); Exh. F (Miller deposition) (ECF No. 33–2 at 36–48) (describing, among other things, how the mortgage underwriter responds when a particular type of loan cannot be approved, and describing the specific steps the mortgage underwriter takes when a loan application is "suspended"); Exh. G (Bunnell deposition) (ECF No. 33–2 at 49–54) (describing, among other things, when the mortgage underwriter had to get supervisor authority to approve a loan); Exh. I (Beckfeld Decl.) (ECF No. 33–2 at 58–65) (describing, among other things, the specific steps the mortgage underwriter takes upon receiving a loan application: "the first thing I do is look at the initial AUS results, the applicant's credit, analyze their debt ratio, their assets, and then the appraisal ..."); and Exh. J (Campbell Decl.) (ECF No. 33–2 at 66–74) (describing, among other things, how her performance is evaluated).

13. Yet, defendant itself has submitted evidence relating to the training of mortgage underwriters. *See, e.g.,* Exh. K (Crapser Decl.) (ECF No. 33–2 at 75–82) ¶ 7 ("U.S. Bank always provides ongoing training such as self-employed courses, VA training, and mortgage insurance training").

14. The deponent talks about documents relating to compensation and incentives, but is never asked about, nor discloses, any specific dollar figures or incentive details (other than, generically, "a bonus"), from those documents.

(emphasis added). Based upon this assertion, defendant asserts that every page of most of plaintiff's substantive exhibits is protected from disclosure as "trade secrets," "proprietary information," and "information that U.S. Bank considers confidential" based upon the parties' stipulated Protective Order.

Defendant has thus failed to identify with any particularity which of the 95 pages is actually confidential and needs to be sealed, as required by the Ninth Circuit standards. Instead, it has requested the sealing of all 95 pages of exhibits, without regard to the plainly non-confidential nature of most of them as described above. Possibly worse, defendant seeks to seal *plaintiff's* evidence regarding issues that *defendant* has produced evidence on. In many cases, defendant's evidence is specific and detailed, yet it fully discloses it, while asking the court to seal the far more general discussion of the exact same thing, as submitted by plaintiff.

> Yet, defendant itself has submitted evidence relating to compensation and incentives. *See, e.g.,* Exh. L (Daugherty Decl.) (ECF No. 33–2 at 83–90) (disclosing the dollar amount of her salary, and the fact that she "can earn incentives for underwriting a certain amount of loans of good quality," and that "the incentive bonus is a reward for working extra hours to review additional files").

15. Yet, defendant has submitted evidence relating to the performance expectations of mortgage underwriters. *See, e.g.,* Exh. M (Flach Decl.) (ECF No. 33–2 at 91–98) (describing, among other things, how "[t]he quality of my underwriting factors into my performance evaluations," and that "I am not evaluated only on my productivity. I understand the quality of my underwriting to be a critical component of the job and I know U.S. Bank is evaluating it because it is in our performance evaluations").

16. These are, of course, the key contentions of this case, and they are undisputed, yet defendant requests that the court seal the transcript portions relating to them.

> Moreover, defendant itself has asserted that "U.S. Bank has classified them ['U.S. Bank's Mortgage Underwriters'] as exempt administrative employees." Opposition at 2. Further, defendant has provided evidence confirming that its mortgage underwriters are not paid overtime wages. *See, e.g.,* Exh. N (Glatte Decl.) (ECF No. 33–2 at 99–106) ("I am paid the same base amount regardless of how many hours per week I actually work").

Given the opportunity to defend and narrow its request to seal, defendant refused to back down on Exhibit 1. *See* Reply in Support of Request To Seal ("Seal Reply") (ECF No. 23–1) at 2. Instead, defendant asserts, for example, that the deponent testified about "the specifics of U.S. Bank's compensation policies." *Id.*, at 2. This is problematic for at least two reasons. First, defendant does not identify where in deponent's testimony, these "specifics" are located. Second, the court searches the transcript in vain for these "specifics." Thus, the assertion is legally insufficient, and appears to be factually untrue.

The deposition transcript includes much *general* information about compensation: underwriters are paid a "base salary," and they may earn an "incentive," which may be a "bonus." The most specific information about the incentive tells, in general terms, how the incentive is calculated, that is, how many loan files must be completed and in what time period, in order to earn the incentive.

In any event, nowhere in the deposition transcript is the amount of the salary disclosed,[17] nor the amount of any incentive, nor the amount of any bonus. Defendant does not advise the court why any of the information disclosed in the deposition transcript is confidential. Defendant, in its Reply, asserts that its "compensation structure" is confidential. However it does not assert which information in the transcript discloses the compensation structure: is it that the bank pays its employees; that the mortgage underwriters are eligible for incentive pay; that the incentive pay is determined by a formula; or is it the formula itself? Aside from the specifics of the formula itself, defendant has freely disclosed all of this, in its declarations opposing conditional certification. These declarations disclose that the employees are paid a salary, that they are eligible for incentive pay, and that the amount of the incentive depends on how many loans they underwrite.[18]

By seeking to seal the entirety of this discussion, defendant fails to identify with any particularity which portion of it is really confidential. If defendant wished to seal, for example, a discussion of the specific formula used to determine incentive pay, it should have made such a request. It failed to do so, and accordingly, Exhibit 1 will not be sealed.

Defendant makes a similar request to protect its "confidential internal policies and guidelines." But once again, it fails to identify which portions of the deposition transcript discloses this information. The court will not guess which information defendant is referring to.

## 2. The *entirety* of Exhibit 2 (January 17 & 18, 2013 deposition transcript excerpts of plaintiff).

Exhibit 2 consists of excerpts of two deposition transcripts of Lisa Park. These excerpts, which defendant asks this court to seal in their entirety, include: the title pages, Attorney Appearances page, exhibit list, jurat page, and the Reporter's Certification page; the introductory pages, in which the deponent states her name and that she is there to testify on behalf of defendant; a discussion of the locations of certain cities and towns—locations of defendant's branches—such as "Chicago,"[19] "Los Alamitos" (California), "Denver" (Colorado), and "Portland" (Oregon); the birthplace of plaintiff's counsel, and the distinction between where counsel was "born," and where he is "from;"[20] requirements and expectations of mortgage underwriters; how mortgage underwriters are evaluated; whether the mortgage underwriters are classified as "ex-

---

17. The declarations submitted by *defendant* disclose specific salaries of mortgage underwriters.

18. *See* Beckfeld Decl. (ECF No. 33–2) ¶ 5 ("In addition to my salary, I am able to earn incentives if I underwrite a certain amount of loans and the loans are of good quality"); Campbell Decl. (ECF NO. 33–2) at 68 ¶ 5 (same); Crapser Decl. (ECF No. 33–2) at 77 ¶ 5 (same); Daugherty Decl. (ECF No. 33–2) at 85 ¶ 5 (same); Flach Decl. (ECF No. 33–2) at 93 ¶ 7 (same); Glatte

Decl. (ECF No. 33–2) at 101 ¶ 5 (same); Jenkins Decl. (ECF No. 33–2) at 109 ¶ 5 (same); Larson Decl. (ECF No. 33–2) at 118 ¶ 6 (same); Streff Decl. (ECF No. 33–2) at 126 ¶ 5 (same).

19. The deponent testifies that it is in Illinois.

20. "I was [born in Edina] . . . but I'm not an Edina guy."

empt," and whether they are eligible for overtime pay; whether mortgage underwriters obtain training; whether mortgage underwriters' hours are logged; a discussion of the deponent's job; how fraud is detected and addressed; mortgage underwriter compensation and incentive plans (apart from the absence of overtime pay); specific programs used for mortgage underwriter training; how defendant responds when facing a payment default; mention of the existence of a quality assurance department; and specifics of how an underwriting assignment is carried out.

This request is subject to the same weakness as discussed for Exhibit 1. Most of the discussion in the transcript is freely disclosed elsewhere by defendant. The court will not do the defendant's job of separating out which portions of the transcripts need to be sealed, from those that do not. It may well be, for example, that even the very general discussion about fraud prevention could be subject to sealing. However, defendant does not ask that the general discussion on fraud be sealed, rather it requests that *all* the transcript excerpts (and most of plaintiff's other substantive exhibits) be sealed. The court will not guess which portions of the transcript defendant really has in mind. Accordingly the request to seal Exhibit 2 will be denied.

### 3. Exhibits 3–5, 8.

Exhibits 3–5 and 8 consist of employee incentive plans. Plaintiff has not specifically opposed the request to seal these exhibits (although they have objected to requests to seal the deposition testimony in which these exhibits are discussed). These documents are not necessary for the court's decision on this motion for conditional certification, and accordingly, the request to seal them will be granted, without prejudice, and only with respect to this motion. That is, plaintiff may re-submit these exhibits, if they are necessary for the court's decision on another matter, and any subsequent request to seal them can be determined at that time.

21. The citations to the as-yet unfiled deposition transcripts refer to the page numbers at the bottom of the transcripts, reading "Exhibit ——, Page ——."

### 4. Exhibits 6, 7 and 9.

Exhibit 6 is an "Action Plan" for "Unsatisfactory Performance," for a specific, named employee. Exhibit 7 is a "Performance Review" for a specific, named employee. Exhibit 9 is a company email regarding the job performance of a specific, named employee.

Defendant apparently (and sensibly), no longer requests that these exhibits be sealed in their entireties, and instead agrees with plaintiff that "employee names in performance reviews and emails relating to job performance" should be redacted. Defendants also request that any employee identification numbers be redacted. The court accordingly will deny the request to seal these documents in their entireties, and instead will direct plaintiff to redact all employee identification numbers from the exhibits. In addition, plaintiff should redact all employee names where the employee is the *subject* of the document. That is, there is no need to redact the names of the persons writing or receiving an email, or the person writing the Action Plan or the person writing the Performance Review.

### B. Conditional Certification
### 1. The Prospective Class Members— Similarly Situated.

The basics of plaintiff's initial showing are not in dispute. Defendant has classified all of its mortgage underwriters, the prospective class members, as "exempt," and has done so at least since 2009. Rule 30(b)6 Dep. of U.S. Bank (Alan Leimkuehler) (January 17, 2013) ("Leimkuehler Depo.")/Exhibit 1, Pages 55 & 102.[21] Also, the prospective class members are not eligible for overtime pay. *Id.,* at Page 62. As for the specifics of the administrative exemption, plaintiff has submitted sufficient evidence in support of her claim that the prospective class members are "similarly situated."

### a. Are mortgage underwriters helping to run the business?

An employee earning over $455 per week[22] is exempt as an "administrative" employee if

22. *See* 29 C.F.R. § 541.600(a) (exemptions apply only to employees "compensated on a salary basis at a rate of not less than $455 per week").

her "primary duty" is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and her "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. §§ 541.200(a)(2), (a)(3); *cf. Miller v. Farmers Ins. Exchange (In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litigation),* 481 F.3d 1119, 1127 (9th Cir.2007) (citing the 2004 version of the regulation).

In turn, work is "directly related to the management or general business operations" if it is "directly related to assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a). That is, the essence of the exemption is that the mortgage underwriters must be engaged in, or least assist in, "the running of a business," including the determination of "its overall course or policies." *Bratt v. County of Los Angeles* 912 F.2d 1066, 1070 (9th Cir.1990) (interpreting an earlier version of the regulation), *cert. denied,* 498 U.S. 1086, 111 S.Ct. 962, 112 L.Ed.2d 1049 (1991). This does not include merely "the day-to-day carrying out" of the business's affairs. *Id.*

Plaintiff has presented common proof of what defendant's business is, as it relates to the mortgage underwriters. The defendant's Form 10–K sets forth in excruciating detail what that business is. *See* Declaration of Matthew C. Helland in Support of Plaintiffs' Motion for Conditional Certification ("Helland Decl."), Exh. 3 (ECF No. 29–3). Plaintiff has also presented common proof—in the form of declarations and Rule 30(b)(6) depositions of defendant—of the mortgage underwriters' job duties, their day-

to-day activities, their compensation, and how they are evaluated. At the level of scrutiny appropriate to this stage of the litigation, this evidence tends to show that the mortgage underwriters are not engaged in running the defendant's business. Rather, it tends to show that they are engaged in the day-to-day carrying out of the business of mortgage lending.

For example, plaintiff's evidence is that the decisions about who will get a loan is made by the defendant, through its lending guidelines and policies.[23] The mortgage underwriters, according to plaintiff's evidence, compare the documentation they receive from a loan applicant against the guidelines and policies set out for them, to determine whether the loan applicant meets the requirements of the guidelines and policies. On its face, this is evidence that the mortgage underwriters—all of them—are not engaged in running the business or setting underwriting policy, but simply carrying out the day-to-day determinations of whether Applicant A meets guidelines B, C and D. *See* 29 C.F.R. § 541.704 ("The section 13(a)(1) exemptions are not available ... for employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances").[24]

Plaintiff's evidence includes declarations from prospective class member mortgage underwriters working in defendant's offices in North Dakota, California, Oregon and Colorado. Each states, that her "primary job duty" is to ensure that "the loans that were approved by defendants were approved pursuant to various policies, procedures and guidelines."[25] The Mortgage Underwriter

**23.** As defendant points out, the underwriters themselves are not of one voice on whether they have "final" say on granting or denying these loans. However, it is undisputed that whether their say is final or preliminary, it is made only pursuant to the guidelines and policies set forth by defendant, and which they are required to follow.

**24.** However, "The use of manuals, guidelines or other established procedures containing or relating to highly technical, scientific, legal, financial or other similarly complex matters that can be

understood or interpreted only by those with advanced or specialized knowledge or skills does not preclude exemption under section 13(a)(1) of the Act or the regulations in this part. Such manuals and procedures provide guidance in addressing difficult or novel circumstances and thus use of such reference material would not affect an employee's exempt status." *Id.*

**25.** *See* ¶ 3 of the Declarations of Andreasen (ECF No. 28–3), Leiting (ECF No. 28–4), Trump (ECF No. 28–5), Miller (ECF No. 28–6), Conner (ECF

Job Description plaintiff submitted also indicates that plaintiffs approve or deny loans "within certain limits," and sets out specific duties apparently applicable to all mortgage underwriters in the prospective class. *See* Helland Decl., Exh. 8 ("Job Description") (ECF No. 29–12).

According to plaintiff's evidence, the mortgage underwriters follow the policies, procedures and guidelines applicable to their work. *See* Job Description (evaluates loan applications "in accordance with industry and business unit standards;" develops loan underwriting portfolio "consistent with the Bank's guidelines"). The prospective class members do not create or modify these policies, procedures or guidelines.[26] They do not price the loans. Leimkuehler Depo. at 53. They do not monitor the loans' compliance with legal requirements. Leimkuehler Depo. at 55. They do not conduct post-closing audits of any loans. Leimkuehler Depo. at 56. Although there are different levels or types of underwriters, they all apply the same guidelines. Leimkuehler Depo. at 74. While there is some "flexibility" or "variance" in how the mortgage underwriters carry out their jobs, "[a]s part of the day-to-day duties, the variance would be limited to guidelines given to the underwriters." Leimkuehler Depo. at 21. None of the prospective class members determine what type of loan would be offered. ECF Nos. 28–3 to 28–8.

The above evidence, taken from plaintiffs' declarations and the defendant's Rule 30(b)(6) deposition, are sufficient to show that the prospective class members are "similarly situated" in respect to whether they are running a business, or simply engaged in the day-to-day carrying out of the business.[27]

### b. Defendant's showing.

Defendant opposes the motion based upon its assertion that it has submitted declarations that say "the opposite" of what plaintiff's declarations state. Even if defendant were correct in its assertion, it is not enough to rebut the plaintiff's showing.[28]

Defendant asserts that plaintiff is incorrect in asserting that mortgage underwriters do not make "counter-offers." Opposition at 10–11. Rather, according to defendant, "understanding the different types of loans U.S. Bank offers, and suggesting alternatives where appropriate [making counter-offers], was part of the Mortgage Underwriters' duties." *Id.*

Defendant fails to explain, however, how making counter-offers affects the determination of whether an employee is exempt. For example, is defendant arguing that an employee who makes a counter-offer is running the business, or that she exercises discretion and independent judgment, or both. If defendant is arguing that it shows discretion and independent judgment, then it is not relevant to the task at hand, because plaintiff, at this point, has not relied on that portion of the exemption. Even if counter-offer making demonstrates that mortgage underwriters exercise discretion and independent judgment, they are still not exempt if they are not engaged in the running of the business.

Even assuming there is a dispute here relating to the business and management portion of the exemption, it is irrelevant to the task of determining whether plaintiff has shown that mortgage underwriters are "similarly situated" for purposes of the administrative exemption. All defendant has done is shown that some U.S. Bank mortgage underwriters *believe* that making counter-offers is one of their job duties, while others *believe*

No. 28–7), and Williams (ECF No. 28–8); Leimkuehler Depo. at 53.

**26.** *See* ¶ 3 of the Declarations of Andreasen (ECF No. 28–3), Leiting (ECF No. 28–4), Trump (ECF No. 28–5), Miller (ECF No. 28–6), Conner (ECF No. 28–7), and Williams (ECF No. 28–8); Leimkuehler Depo. at 53.

**27.** Plaintiff makes no mention of the other two requirements for the administrative exemption.

Since it will be defendant's burden to establish that *all three* requirements are satisfied, plaintiff is entitled to take this course, however risky.

**28.** In any event, defendant is *not* correct that its declarations say "the opposite" of what plaintiff's say. Defendant has simply submitted declarations that put a different "spin" on what plaintiff's declarants have said.

that it is not part of their job.[29] However this "dispute" is resolved, it does not contribute to resolution of the critical question of what the mortgage underwriters' "primary duty" is.

Defendant does not assert that plaintiff's "primary duty" is making counter-offers, nor is there any evidence that it is. Whether an individual, cherry-picked job duty is or is not applicable to mortgage underwriters simply does not assist the court in determining whether they shared "primary" job duties. In other words, even if an underwriter makes a counter-offer once each month, for example, and assuming that making counter-offers is an exempt job duty, if she spends the remaining 99% of her job doing non-exempt work, then she is not exempt. Thus, resolving the esoteric question of whether the mortgage underwriters do or do not make counter-offers is pointless without the information defendant has failed to present: is this the mortgage underwriters' primary duty? Alternatively, does this, added together with other exempt duties, comprise the mortgage underwriters' primary duty? It simply is not enough to identify isolated activities that a mortgage underwriter might engage in. The activities must be exempt, and they must comprise the underwriter's primary duties.

Defendant appears to argue that 29 C.F.R. § 541.203(b) is conclusive on whether mortgage underwriters are exempt or not. How-

ever, that regulation only provides "examples" of employees in the financial services industry who "generally" meet the requirements for the administrative exemption. This regulation may be useful when, in due course, the court is called upon to rule on the merits of the exemption.[30] This motion, however, is about whether the class should be conditionally certified, not whether plaintiff or defendant will ultimately prevail on the merits of the lawsuit.

Defendant further asserts that the declarations contradict each other on how mortgage underwriters are evaluated. In fact, there is no contradiction in the declarations. Plaintiff's declarations state that they are *eligible* for incentives if they complete a certain number of loans, which is exactly what defendant's declarations say. Defendant's declarations go further, however, and state that the loans must *also* be of a certain quality to actually receive the incentive. These statements are not "opposite" or "contradictory." Moreover, even if the court were to accept defendant's declarations in full, and reject plaintiff's, they would show that mortgage underwriters are "similarly situated" in how they are evaluated.[31]

The remainder of defendant's arguments essentially attack plaintiff's motion for failing to "prove" that the mortgage underwriters were mis-classified as exempt. Defendant's arguments fail because, first, it will be *defendant's* burden (not plaintiff's) to show that

29. In any event, even if the court were simply to credit defendant's declarations and disregard plaintiff's allegedly contrary ones—even though there is no legal basis for doing so at this stage—then it would still be the case that the prospective class members were "similarly situated." That is, they are similarly situated because they *do* make counter-offers when appropriate (rather than being similarly situated because they do not make counter-offers).

30. The regulation provides:

Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the em-

ployer's financial products. However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption.

29 C.F.R. § 541.203(b).

31. Defendant also asserts that, according to the evidence, some mortgage underwriters are the final decisionmakers on loans, while others are not, showing that they are not "similarly situated." *See* Opposition at 12. However, in the same brief, defendant asserts that they are all final decisionmakers: "U.S. Bank's Mortgage Underwriters ... are the final decision-makers for U.S. Bank." Opposition at 6. Defendant, in short, is arguing both that *all* mortgage underwriters are final decision-makers, and that some are not. Its "argument" here will be disregarded, although defendant is well advised to resolve its cognitive dissonance before the court reaches the merits portion of this case.

the underwriters were properly classified as exempt. Second, this is a motion for conditional certification, and the court is not called upon here to make the merits determination that defendant seeks.

Even if the court were to consider contradictory evidence at this stage—which the cases indicate is not appropriate—there simply is nothing there that contradicts plaintiffs' evidence. The defendants' evidence simply puts a different "spin" on it. For example, defendant asserts that its evidence shows that mortgage underwriters engage in " 'analyzing loan applications to determine a customer's creditworthiness.' " But that is what plaintiff's evidence shows, just phrased differently. Defendant does not dispute that in analyzing loan applications, mortgage underwriters are bound by the bank's guidelines.

### C. Williams as Class Representative.

■■■■ Defendant asserts that plaintiff signed a severance agreement upon leaving U.S. Bank that waived "all claims upon termination of her employment." Opposition at 20. However it appears that "an individual employee's right to a minimum wage and to overtime pay under the Act [FLSA]," is "nonwaivable." *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). It would appear therefore, that plaintiff's "waiver" is of no legal significance.

### D. Notice

Plaintiff has submitted a proposed notice to potential class members. *See* Proposed Notice (ECF No. 29–15). Defendant has three objections to the Proposed Notice.

### 1. Warning that plaintiffs may be liable for costs and counterclaims.

■■■■ Defendant argues that potential class plaintiffs should be warned that they "may be held liable for costs associated with the lawsuit and for potential counterclaims that could be asserted against them." Oppo-

sition at 20–21. The only counterclaim defendant identifies is something it calls "breach of the Release of Claims" against an employee who signed a "Release of Claims." However it appears that "an individual employee's right to a minimum wage and to overtime pay under the Act [FLSA]," is "nonwaivable." *Barrentine*, 450 U.S. at 740, 101 S.Ct. 1437. Defendant does not explain how it could have a counterclaim for "breach of Release of Claim," even if such a cause of action otherwise exists, in light of *Barrentine*.

As for costs of the lawsuit, plaintiffs' counsel represents and states in a Declaration: "In my firm's fee agreements with individual Plaintiffs, my firm has agreed to pay all costs imposed on Plaintiffs, to the extent ethical rules allow. We would not pass these costs back on to individual Plaintiffs." Reply Declaration of Matthew C. Helland (ECF No. 35–1) ¶ 4. Moreover, defendant has not identified a single instance where an FLSA class plaintiff has been taxed the costs of suit. In light of this, it appears that the proposed warning would have the sole effect of chilling potential plaintiffs' participation in this lawsuit.

### 2. Limitations and Opt–In Period.

■■■■ Defendant argues that the notice be directed only to persons who are within the two-year statute of limitations, rather than the three-year period applicable to "willful" violations. Defendant asserts that plaintiff has failed to establish an "evidentiary basis" for a willful violation in their motion. Defendant offers no citation to any authority, nor any explanation for why a motion for conditional certification should include substantive evidence of a willful violation. The defendant's objection appears without substantive justification and is overruled. Plaintiffs have sufficiently alleged a willful violation in their complaint, and will be put to their proof at the appropriate time.[32] The evidentiary burden plaintiffs have in this motion, is to show the court that the proposed plaintiffs are "similarly situated," a burden they have met.

---

**32.** In any event, plaintiffs' evidence submitted in support of the motion for conditional certification clearly shows that defendant willfully declined to pay overtime wages to employees who worked overtime hours. The question of whether this is lawful or not is the ultimate question to be decided by this court.

**614**

Defendant also objects to the 90–day opt-in period, proposing instead a 60–day period, "which courts in this Circuit have found to be reasonable," citing two cases, one from the District of Nevada and one from the Northern District of California. The objection, in other words, offers no independent reason the period should be reduced from 90 to 60 days, considering that some courts in this Circuit have approved 60 days, and others have approved 90 days.[33] The objection is overruled.

### 3. Neutral third party administrator.

Defendant reminds the court that "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann–La Roche*, 493 U.S. at 174, 110 S.Ct. 482. However, defendant does not explain why the proposed notice would violate judicial neutrality in this case. The objection is overruled.

### IV. CONCLUSION

For the reasons stated above:

1. Defendant's Request to Seal Exhibits 1 and 2, is **DENIED,** and plaintiff shall file these documents, unredacted, in the public docket no later than 21 days from the date of this order;

2. Defendant's Request to Seal Exhibits 3–5 and 8, is **GRANTED,** as unopposed (that is, not on the merits), and without prejudice to plaintiff's ability to re-submit them in connection with another motion;

3. Defendant's Request to Seal Exhibits 6, 7 and 9, is **DENIED,** except to the degree that the request seeks the redaction of the names of employees who are the subject of those performance-related documents, and except to the degree that it seeks the redaction of all employee identification numbers, and plaintiff shall file redacted versions of these documents in the public docket no later than 21 days from the date of this order;

4. Plaintiffs shall file unredacted versions of their memoranda and supporting documents in support of the motion for conditional certification, retaining only such redactions, if any, as are necessary to comply with this order;

5. Plaintiff's motion for conditional certification is **GRANTED;** and

6. Plaintiff shall send its Notice of Collective Action Lawsuit forthwith to all potential class members. The notice shall contain no advertising, commentary or any other material, other than what is disclosed at ECF No. 29–15.

IT IS SO ORDERED.

---

**33.** *See, e.g., Gee v. Suntrust Mortg., Inc.,* 2011 WL 722111 at *4 (N.D.Cal.2011) (in an FLSA collective action regarding mortgage underwriters, the court approves a 90–day opt-in period for mortgage underwriters) (Seeborg, J.); *Ramirez v. Ghilotti Bros. Inc.,* 2013 WL 1786636 at *7 (N.D.Cal. 2013) (Breyer, J.) (in a case involving laborers, the court authorized notice in English and in Spanish, and rejected defendant's "proposed reduction of the opt-in period from 90 to 60 days"); *Brewer v. General Nutrition Corp.,* 2013 WL 100195 at *5 (N.D.Cal.2013) (Rogers, J.) (regarding retail store employees, "[t]he opt-in period shall be 90 days from the date the notice is sent"); *Collinge v. Intelliquick Delivery, Inc.,* 2012 WL 3108836 *3 (D.Ariz.2012) (Sedwick, J.) (regarding delivery drivers, the court rejected defendant's 30–day proposal, and plaintiff's 90–day proposal, and concluded that "sixty days from the date of the notice is an appropriate opt-in period"); *Sanchez v. Sephora USA, Inc.,* 2012

WL 2945753 at *6 (N.D.Cal.2012) (Armstrong, J.) (regarding salespersons, "the Court finds that a notice period of sixty days sufficiently balances both parties' concerns and is reasonable under the circumstances presented") (and collecting cases); *Luque v. AT & T Corp.,* 2010 WL 4807088 at *7 (N.D.Cal.2010) (Breyer, J.) (regarding telephone company field managers, court approves a 60–day opt-in period); *Lewis v. Wells Fargo & Co.,* 669 F.Supp.2d 1124, 1126 (N.D.Cal.2009) (Wilken, J.) (regarding bank's information technology employees, court approved a 75–day opt-in period); *Stanfield v. First NLC Fin. Svcs., LLC,* 2006 WL 3190527 at *6 (N.D.Cal.2006) (Armstrong, J.) (regarding loan officers, court approved 60–day opt-in period); *Carrillo v. Schneider Logistics, Inc.,* 2012 WL 556309 at *15 (C.D.Cal.) (180–day opt-in period appropriate for class of low-income migrant workers), *aff'd mem. on another issue,* 501 Fed.Appx. 713 (9th Cir. 2012).