## Mark LEUTHOLD et al., Plaintiffs,

v.

## DESTINATION AMERICA, INC et al., Defendants.

### No. C–03–1390 VRW.

United States District Court, N.D. California.

Aug. 16, 2004.

Brian Irion, Mitchell Scott Rosenfeld, Capstone Law Group LLP, San Mateo, CA, James Mitchel Sitkin, John J. Dacey, Dacey & Sitkin, San Francisco, CA, for Plaintiffs.

Elizabeth Thompson, Joma R. Jones, Sonnenschein Nath & Rosenthal LLP, Gia L. Cincone, Leonard Joseph Augustine, Jr., Maureen A. Sheehy, Robert James Shilliday, III, Townsend and Townsend and Crew LLP, San Francisco, CA, for Defendants.

## ORDER

WALKER, District Judge.

Plaintiff tour directors bring this fair labor standards action against travel industry companies Destination America, Inc. (DA) and Contiki U.S. Holdings, Inc. (Contiki), as well as Richard Launder, the former president of both companies. Plaintiffs have moved to certify: (1) a 29 USC § 216(b) collective action for alleged violations of the overtime and minimum wage requirements of the Fair Labor Standards Act (FLSA); and (2) a FRCP 23(b)(3) class action for alleged violation of California labor laws. Docs # 216, 218, 219. For the following reasons, the court GRANTS plaintiffs' motion conditionally to certify a FLSA class (Docs # 218, 219), although the court does so only for the limited purpose of providing notice to prospective class members. The court DENIES plaintiffs' motion to certify a Rule 23(b)(3) class on the California labor law claims (Doc # 216).

### I

### A

Defendants DA and Contiki both are companies that operate package bus tours. DA is a "receptive tour operator," meaning that it operates tours on behalf of other companies. Decl Richard Launder (Launder Decl; Doc # 251) at 2 ¶ 7. DA's clients are wholesale tour operators that hire DA to operate their tours. *Id.* For large-volume clients, DA provides private label tours that are operated to the specifications of the particular clients. *Id.* DA also provides "seat in coach" tours, in which different wholesale clients purchase individual seats on DA's buses, as well as special groups tours that cater to sports teams or special interest clubs. *Id.* at 3 ¶ 9.

Contiki is different from DA, as it has its own retail brand, designs its own tours and principally operates only its own tours. *Id.* at 7 ¶ 30. Contiki is not a receptive tour operator. *Id.* Contiki markets its tours to the 18- to 35-year-old demographic. *Id.*

DA and Contiki, though separate companies, are interrelated in several ways. For example, DA and Contiki share the same parent company and have shared an office since 2001. Pl Exh 12 (Doc # 223) at 248:12–20, 384:13–20, 710:7–10. Defendant Launder is the former president of both companies, and Michael Kidd has been the chief financial officer (CFO) of both companies since 1999. *Id.* at 234:20–25, 235:15–23, 284:14–285:8, 497:23–498:5. Some of the companies' corresponding departments are at least partially integrated, including their accounting, operations and information technology departments. *Id.* at 247:14–24, 250:1–13, 498:6–18, 499:12–23, 738:12–18, 739:21–740:9. The companies share a human resources department that oversees group employee benefits plans. *Id.* at 444:1–10, 498:19–499:11.

Some differences exist between DA's tour directors and Contiki's tour managers. DA tour directors tend to be experienced professionals who cater to the older, more experienced travelers who are customers on the tours DA operates. Launder Decl at 4 ¶ 16. All DA tour directors must have prior tour management experience. Depo Liz Cosenza (Cosenza Depo; Decl Elizabeth Thompson (Doc # 262) at 2 ¶¶ 7; 8, Exhs F, G) at 73:11–14, 74:7–10. DA tour directors are able to request certain itineraries, pick the drivers

and buses they want and are free to refuse assignments. Decl Elizabeth K Cosenza (Cosenza Decl; Doc # 252) at 2 ¶ 6. DA has a four-tiered compensation scale to address its tour directors' varying levels of skill or experience. Consenza Depo at 561:14–562:5. Before mid–2003, DA tour directors were paid a flat amount for each tour, but since then have been paid a weekly salary. Launder Decl at 6–7 ¶¶ 25, 28. DA tour directors also earn commissions on sales of optional excursions, as well as tips from passengers. *Id.* at 7 ¶ 29.

Contiki tour managers, on the other hand, tend to be recent college graduates in the same age range as the typical Contiki passenger. *Id.* at 8 ¶ 32. Contiki only hires individuals who have graduated from Tour Manager Training School, Inc. (TMTS). *Id.* While prior experience in the industry is considered helpful, Contiki does not impose it as a prerequisite to employment. *Id.*

Some of the terms of employment for DA tour directors and Contiki tour managers appear to be similar. Most DA tour directors and Contiki tour managers residing in the United States have been classified as employees. See Exh 12 at 576:8–10, 583:18–584:5, 783:11–18. Generalized job duties are set forth in standardized documents. See, e.g., Decl Jill M Amodeo (Amodeo Decl; Doc # 242) at 2–5 ¶ 3.

Despite these standard operating procedures, DA tour directors and Contiki tour managers appear to retain a substantial level of discretion. Within the framework of the tour itinerary, the tour directors and managers have discretion to create their own unique tour programs, including commentaries, routing from point to point, rest stops, sightseeing breaks and entertainment. See, e.g., Decl Dan Agriesti (Agriesti Decl; Doc # 258) at 4 ¶ 4; Decl Judie Clark (Doc # 247) at 2–4 ¶¶ 3–7; Decl Michael Murakami (Doc # 250) at 2 ¶¶ 3–5; Launder Decl at 1–2 ¶¶ 4–5, 3–4 ¶¶ 14–16. The policies of DA and Contiki both acknowledge and emphasize that tour directors and managers are expected to exercise a good deal of discretion. See Cosenza Depo at 63:7–64:11. The tour directors and managers are unsupervised virtually all of the time. *Id.* at 29:5–16; Decl

Kelly Camps (Camps Decl; Doc # 253) at 2 ¶ 6. Not surprisingly, the tour directors and managers are called upon to handle unexpected situations on most tours. See, e.g., Launder Decl at 2 ¶ 5.

Plaintiffs have proposed three individuals to act as class representatives in this action. Plaintiff Mark Leuthold is a California resident who has worked as a DA tour director since the early 1990s. Decl Mark Leuthold (Leuthold Decl; Doc # 239) at 1 ¶ 1. Plaintiff Thomas F Williams is a California resident who has worked as a DA tour director since 1997. Decl Thomas F Williams (Williams Decl; Doc # 241) at 1 ¶ 1. Plaintiff Mario Restrepo is also a California resident and has worked as both as a DA tour director and as a Contiki tour manager since 1999. Decl Mario Restrepo (Doc # 240) at 1 ¶ 1.

### B

Plaintiffs filed the original complaint in this action on April 1, 2003. Doc # 1. The crux of plaintiffs' claims are that the defendants have failed to pay the plaintiff tour directors minimum wages and overtime. The complaint includes claims pursuant to the Fair Labor Standards Act (FLSA), FRCP 23 class claims under California law and a claim under § 17200 of the California Business and Professional Code. *Id.* In addition to DA, Contiki and Launder, the original complaint also named Trafalgar Tours (TT), Trafalgar Tours, Inc. (TT Inc.), Trafalgar Tours USA (TT USA), Trafalgar Tours International Ltd. (TTIL), Travcorp and Travcorp USA. *Id.*

Beginning in May 2003, TTIL filed various motions to dismiss and motions to quash service. Docs # 18, 44, 48. In the meantime, the court had referred the parties to a magistrate judge for resolution of various discovery disputes. Doc # 104.

After taking oral argument on TTIL's motions on March 4, 2004 (Doc # 199), the court issued an order on March 15, 2004, in which the court: (1) granted defendants' motion to dismiss the nonexistent entities TT, TT Inc. and Travcorp; (2) granted TTIL's motion to dismiss for lack of personal jurisdiction; and (3) granted TTIL's motion to quash plaintiffs'

first three attempts at service. Doc # 201. Subsequently, the parties stipulated to the dismissal of defendants TT USA and Travcorp USA. Docs # 204, 206. Plaintiffs filed an amended complaint on May 18, 2004. Doc # 207. The remaining three defendants filed their answer on June 8, 2004. Doc # 212.

Plaintiffs filed the instant motions to certify a FLSA class and a Rule 23(b)(3) class on June 17, 2004. Docs # 215, 216, 218, 219. The court took oral argument on the motions on August 12, 2004.

## II

As a preliminary matter, the court must address plaintiffs' objections to defendants' evidence. In connection with their reply brief, plaintiffs filed a twenty-two page document in which they object to almost every declaration defendants filed in support of their opposition papers. See Doc # 272. The bulk of plaintiffs' objections deal with matters pertaining to relevancy of evidence. Because none of plaintiffs' objections would change the outcome of the court's decision on the pending motions, the court need not rule on any of them at this stage of the litigation.

## III

The court first addresses plaintiffs' motion to certify a FLSA collective action pursuant to § 216(b). Plaintiffs' proposed class consists of all current or former DA and Contiki tour directors who at any time from April 1, 2000, to the present worked in the United States or resided in the United States while working for DA or Contiki. See Not Mots (Doc # 215) at 2:22–26.

### A

The FLSA provides a right of action to an employee against his employer when the employer fails to pay overtime wages. See 29 USC §§ 203, 207. Such an employee may also bring a collective action on behalf of similarly situated employees. *Id.* at § 216(b); see also *Does v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir.2000); *Pfohl v. Farmers Ins. Group*, 2004 WL 554834, *2, 2004 U.S. Dist LEXIS 6447, *6 (C.D.Cal.2004) (Tevrizian, J.). The district

court may authorize the named FLSA plaintiffs to send notice to all potential plaintiffs and may set a deadline for those potential plaintiffs to join the suit. *Pfohl*, 2004 WL 554834 at *2, 2004 U.S. Dist LEXIS 6447 at **6–7 (citing *Advanced Textile Corp.*, 214 F.3d at 1064). Potential plaintiffs must "opt in" to the suit by filing a written consent with the court. See § 216(b). Should an employee not file such written consent, then he is not bound by the outcome of the collective action and may bring a subsequent private action. *Pfohl*, 2004 WL 554834 at *2, 2004 U.S. Dist LEXIS 6447 at *6 (citing *EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1508 n. 11 (9th Cir.1990)).

Determining whether a collective action is appropriate is within the discretion of the district court. *Ray v. Motel 6 Operating*, 1996 WL 938231, **2–3, 1996 U.S. Dist LEXIS 22565, **5–6 (D.Minn.1996) (Montgomery, J.). To certify a FLSA collective action, the court must evaluate whether the proposed lead plaintiffs and the proposed collective action group are "similarly situated" for purposes of § 216(b). Plaintiffs bear the burden of making this showing. *Pfohl*, 2004 WL 554834 at *2, 2004 U.S. Dist LEXIS 6447 at *8. The FLSA does not define the term "similarly situated," and the Ninth Circuit does not appear yet to have spoken on this issue. See *id.* Courts generally follow one of two approaches: (1) evaluating the FLSA collective action in terms of Rule 23's class certification requirements; or (2) applying a two-step approach involving initial notice to prospective plaintiffs followed by a final evaluation whether such plaintiffs are similarly situated. *Kane v. Gage Merchandising Services, Inc.*, 138 F.Supp.2d 212, 214 (D.Mass. 2001) (Gorton, J.) (citing *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995)); see *Pfohl*, 2004 WL 554834 at *2, 2004 U.S. Dist LEXIS 6447 at *8. The majority of courts prefer the latter approach. *Pfohl*, 2004 WL 554834 at *2, 2004 U.S. Dist LEXIS 6447 at *8; but see *Shushan v. University of Colorado at Boulder*, 132 F.R.D. 263, 265 (D.Colo.1990) (Nottingham, J.) (holding that named representatives must satisfy all requirements of Rule 23 insofar as those requirements are consistent with

§ 216(b)). The court proceeds under the two-tiered analysis, given that the majority of courts have adopted it.

B

■ Under the two-tiered approach, the court must first decide, based primarily on the pleadings and any affidavits submitted by the parties, whether the potential class should be given notice of the action. *Pfohl*, 2004 WL 554834 at *2, 2004 U.S. Dist LEXIS 6447 at *8; *Kane*, 138 F.Supp.2d at 214 (citing *Mooney*, 54 F.3d at 1214); see *Reeves v. Alliant Techsystems, Inc.*, 77 F.Supp.2d 242, 246 (D.R.I.1999) (Lisi, J.). Because the court generally has a limited amount of evidence before it, the initial determination is usually made under a fairly lenient standard and typically results in conditional class certification. *Pfohl*, 2004 WL 554834 at *2, 2004 U.S. Dist LEXIS 6647 at *8; *Kane*, 138 F.Supp.2d at 214; *Reeves*, 77 F.Supp.2d at 246.

■ Once discovery is complete and the case is ready to be tried, the party opposing class certification may move to decertify the class. *Kane*, 138 F.Supp.2d at 214; *Reeves*, 77 F.Supp.2d at 247. The court then must make a factual determination regarding the propriety and scope of the class and must consider the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations. *Pfohl*, 2004 WL 554834 at **2–3, 2004 U.S. Dist LEXIS 6447 at **8–9 (citing *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)); see also *Reeves*, 77 F.Supp.2d at 247. Should the court determine on the basis of the complete factual record that the plaintiffs are not similarly situated, then the court may decertify the class and dismiss the opt-in plaintiffs without prejudice. *Kane*, 138 F.Supp.2d at 214 (citing *Reeves*, 77 F.Supp.2d at 247).

■ With respect to the case at bar, the parties disagree whether the court should evaluate FLSA certification based on the lenient first tier analysis or the more stringent second tier analysis. Defendants argue that discovery is drawing to a close and that the court has enough evidence before it to make a factual determination under the second tier analysis. Opp FLSA Mot Certify (Doc # 263) at 6:21–5:5; 8:13–19. Plaintiffs respond that discovery has not been completed and contend that the court must begin with the notice question. Reply FLSA Mot Certify (Doc # 268) at 2:13–14.

Although it is a close question, given that extensive discovery has already taken place, the court agrees with plaintiffs that the court ought to begin the FLSA class certification analysis with the question whether notice should be sent to the prospective class. Several considerations support this conclusion. First, the discovery phase of this lawsuit, though apparently drawing to a close, is still in something of a state of flux. The parties were in the midst of discovery at the time plaintiffs filed these motions in June 2004. Throughout the pendency of the motions, the parties have been embroiled in various discovery disputes, which have been overseen by Magistrate Judge Maria Elena James. Some of those disputes appear to be ongoing. For example, the court recently overruled plaintiffs' objections to one of Magistrate Judge James' orders compelling discovery regarding plaintiffs' financial circumstances. See Docs # 265, 266, 275. And it appears that some outstanding discovery requests remain. See Supp Decl James Sitkin (Supp Sitkin Decl; Doc # 271) at 3–5 ¶ 3. Although the parties have filed an impressive pile of declarations and deposition excerpts, it is unclear to the court whether a complete factual record has been developed and presented to the court.

Second, the two-tier approach contemplates progression through the notice stage before reaching the more rigorous inquiry required to maintain the class. This is evident from the methods usually employed to decide the issues raised by the two tiers. At the first tier, the proposed class representatives ask the court to determine whether conditional certification is proper so that notice may be sent to potential plaintiffs. At the second tier, the impetus for reaching the more stringent factual analysis is a motion to

decertify the class filed by defendants. It would be unusual to reach the latter inquiry upon motion of the plaintiffs. Even more anomalous would be to reach the questions governing the standard for decertification without ever reaching the threshold question whether conditional certification and notice are appropriate.

It is true that courts sometimes bypass the first stage when discovery has been completed. See, e.g., *Pfohl,* 2004 WL 554834 at *2–3, 2004 U.S. Dist LEXIS 6447 at *9; *Ray,* 1996 WL 938231 at *3–4, 1996 U.S. Dist LEXIS 22565 at *9. But even accepting that leapfrogging over necessary steps is proper, the court believes that such an approach is inappropriate in this case. As described above, it is unclear whether the factual record of this case is complete. The relevant facts have not been presented with clarity, and the court cannot be certain whether any of the ongoing discovery disputes would inform the court's second tier analysis.

Further, although some of the proposed class members are clearly aware of the lawsuit, no formal solicitation appears to have taken place yet. Without some sort of formal solicitation, it remains unclear how many of the proposed class members may want to participate in the suit. Cf. *Pfohl,* 2004 WL 554834 at *10, 2004 U.S. Dist LEXIS 6447 at **31–32 (denying notice in part because plaintiffs' solicitation had failed to produce a significant number of class participants). The number and type of plaintiffs who choose to opt into the class may affect the court's second tier inquiry regarding the disparate factual and employment situations of the opt-in plaintiffs, as well as fairness and procedural issues. Bypassing the notice stage altogether would deprive the court of this information and might deprive some plaintiffs of a meaningful opportunity to participate.

Finally, beginning with tier one of the analysis is the most equitable means of proceeding. As noted above, should the court bypass tier one entirely, some potential plaintiffs might not become aware of the lawsuit and would not have an opportunity to join the suit. And should the court proceed to tier two on an unsettled factual record, the court might be deprived of crucial facts that would support plaintiffs' arguments for class treatment. The potential prejudice to plaintiffs of bypassing tier one thus is significant. On the other hand, the consequences to defendants of beginning with tier one are not unduly burdensome. Should the court conditionally certify the class, defendants will be free to move for decertification once the factual record has been finalized and the time period for opting in has expired.

## C

■ Having determined that the court should begin at the beginning, the court now analyzes whether it should conditionally certifying the class for notice purposes. Applying the more lenient first tier analysis, the court believes that such conditional certification is appropriate here. At this stage of analysis, courts usually rely only on the pleadings and any affidavits that have been submitted. *Kane,* 138 F.Supp.2d at 214. Some courts only require that plaintiffs make "substantial allegations" that the putative class members were subject to a single illegal policy, plan or decision. *Id.* (citing *Mooney,* 54 F.3d at 1214).

Here, plaintiffs have provided enough support to meet this threshold showing. First, plaintiffs' complaint alleges that all DA and Contiki tour directors and tour managers have never been paid overtime wages. See FAC (Doc # 207) at 5–6 ¶ 18, 7 ¶ 22. The proposed lead plaintiffs have also submitted affidavits describing their job duties, asserting that they often work more than forty hours per week without overtime pay and claiming that their experiences are common to the whole proposed class. See generally Leuthold Decl; Williams Decl; Restrepo Decl. Defendants' arguments in their opposition brief focus on the more stringent second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed class. For now, the information presented by plaintiffs is adequate to warrant conditional certification of the class for purposes of notifying proposed class members of the pendency of the suit. Accordingly, the court GRANTS plaintiffs' motion for

conditional certification under FLSA (Docs # 218, 219).

## III

The court next addresses plaintiffs' motion to certify a Rule 23(b)(3) class to pursue claims based on violations of California fair labor standards (Doc # 216). Plaintiffs proposed class consists of all current or former DA or Contiki tour directors who at any time from April 1, 2000, to the present worked in California or resided in California while working for DA or Contiki and were classified by DA or Contiki as employees. Not Mots at 2:12–14.

Rule 23(a) sets forth the preliminary requirements to certifying a class action: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties must be able fairly and adequately to protect the interests of the class. FRCP 23(a); see also, e.g., *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir.1998). In addition to satisfying the Rule 23(a) prerequisites, the class must also satisfy one of the three alternatives listed under Rule 23(b). *Walters*, 145 F.3d at 1045. Plaintiffs bear the burden of demonstrating that they have satisfied all four Rule 23(a) elements and one Rule 23(b) alternative. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.2001). Failure to carry the burden on any Rule 23 requirement precludes certifying a class action. *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 152 (N.D.Cal.1991) (Jensen, J.) (citing *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975)).

Plaintiffs assert that they meet *all* the requirements of Rule 23(a), and defendants vigorously contend that plaintiffs have met *none* of those four requirements. The court need not decide those issues, however, because plaintiffs' failure to satisfy Rule 23(b) is dispositive of the Rule 23 motion. Plaintiffs argue that their proposed class satisfies

alternative (3) under Rule 23(b), which authorizes the court to certify a class action if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and * * * a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FRCP 23(b)(3); see also *Zinser*, 253 F.3d at 1189. Regardless whether common questions of law and fact predominate, the court does not believe that certifying a Rule 23 class action is the superior means of adjudicating plaintiffs' claims.

■ Under Rule 23(b)(3), the court must evaluate whether a class action is superior by examining four factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Zinser*, 253 F.3d at 1190–92. Relevant to an examination of these factors is a comparative evaluation of alternative methods of resolving the dispute. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir.1998). At present, plaintiffs have a different alternative available to them: prosecuting their pendent state law claims as part of the FLSA class action. This alternative undercuts all the Rule 23(b)(3) superiority factors.

■ First, the FLSA class action allows individuals to control their participation in this litigation in a far more expeditious fashion than does a Rule 23 class action. FLSA and Rule 23 provide different means for participating in a class action: FLSA provides for participation on an opt-in basis (see § 216(b)), while Rule 23 requires that nonparticipating class members affirmatively opt out of the suit (see FRCP 23(c)(1)(B)). In other words, the FLSA suit provides a means of participation for individuals who truly wish to join the suit, while requiring no action from those who do not wish to join. By contrast, a Rule 23 class requires that a

potential class member take affirmative action not to be bound by the judgment.

This opt-in/opt-out consideration undermines two of the superiority factors. The individual plaintiffs' ability to control the litigation is particularly significant in this case because defendants have produced evidence that substantial hostility against this lawsuit exists amongst potential class members. See, e.g., Agriesti Decl at 2 ¶ 2; Clark Decl at 5 ¶ 15; Decl Sharon Timberlake (S Timberlake Decl; Doc # 246) at 3 ¶ 9; Decl Kimo Grigsby (Grigsby Decl; Doc # 248) at 3 ¶ 8. Given the level of discord in the potential class, the court's view is that it makes more sense to allow plaintiffs to opt in to the lawsuit, rather than requiring them to opt out. Further, this consideration demonstrates that managing the class could be an unwieldy process. Confusion would likely result in asking potential plaintiffs both to opt in and to opt out of the claims in this suit.

Second, the fact that plaintiffs' Rule 23 class is based on state law claims is problematic and raises a jurisdictional concern. The court's adjudication of the California state law claims is anchored upon its adjudication of the accompanying FLSA claims. See 28 USC § 1367(a). As noted above, only the employees who have filed the suit or opted in to the suit can be part of the FLSA suit. Should only a few plaintiffs opt in to the FLSA class after the court were to certify a Rule 23 state law class, the court might be faced with the somewhat peculiar situation of a large number of plaintiffs in the state law class who have chosen not to prosecute their federal claims. The court might then be in a position in which declining supplemental jurisdiction would be appropriate, given that the state law claims could be said substantially to predominate over the federal claims. See *Hasken v. City of Louisville*, 213 F.R.D. 280, 283–84 (W.D.Ky.2003) (Simpson, J.) (declining to certify a Rule 23 state law class under similar circumstances). Further, the policy behind requiring FLSA plaintiffs to opt in to the class would largely "be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement." *Rodriguez v. The Texan, Inc.*, 2001 WL 1829490, *2, 2001 U.S. Dist. LEXIS 24652, *3 (N.D.Ill.2001) (Shadur, J.).

This jurisdictional consideration undermines the remaining two Rule 23(b)(3) factors. The factor regarding the existence of other litigation does not favor a Rule 23 class, because the FLSA action is a more appropriate vehicle to hear the state law claims of plaintiffs who are interested in pursuing such claims. Further, the jurisdictional considerations tend to undermine the propriety of concentrating the litigation of the state law claims in federal court. Should the rate of opt-ins be low, it is likely that state law issues will substantially dominate over federal law issues, and it might be appropriate simply to dismiss the state law claims.

Based on these considerations, it is evident that certifying a Rule 23 class would exacerbate or create numerous problems. Those plaintiffs who choose to opt in to the FLSA class will certainly be able to prosecute any pendent state law claims as part of that suit. Maintaining the suit exclusively as a FLSA conditional class action is superior to certifying an additional state law class under Rule 23(b)(3). Accordingly, plaintiffs' motion to certify a class pursuant to Rule 23(b)(3) (Doc # 216) is DENIED.

IV

Given that the court has concluded that class certification is appropriate in the FLSA case, the court must determine the form of notice that should be issued to the prospective plaintiffs. Plaintiffs and defendants each have submitted proposed forms of notice, but those forms of notice address both the proposed FLSA class and the proposed Rule 23 class. Neither of the proposed forms of notice, therefore, is appropriate. The court believes that the best course of action is to have the parties submit revised proposed forms of notice that reflect the court's decision only to certify a FLSA class. Such revised forms of notice should be submitted within ten days of the date of this order. The parties should file any objections within twenty days of the date of this order,

at which time the matter will be deemed submitted.

## V

For the foregoing reasons, plaintiffs' motion to certify a FLSA class action is GRANTED (Docs # 218, 219), although the court's certification of such a class is conditional and is for purposes of notification only. Plaintiffs' motion to certify a Rule 23(b)(3) class for related state law claims (Doc # 216) is DENIED. The parties are ORDERED to submit revised proposed orders within ten days of the date of this order.

The parties are also ORDERED to report to the court for a case management conference (CMC) on Tuesday, December 14, 2004, at 9:00 am, or at some other date and time as the parties may arrange between themselves and the court's deputy clerk, Cora Delfin, who may be reached at (415) 522–2039.

IT IS SO ORDERED.