Christine VILLARREAL, Plaintiff,

v.

CAREMARK LLC, Defendant.

No. CV–14–00652–PHX–DJH.

United States District Court,
D. Arizona.

Signed Dec. 16, 2014.

Filed Dec. 17, 2014.

---

Daniel Solomon Brome, Matthew C. Helland, Nichols Kaster LLP, San Francisco, CA, Tim C. Selander, Nichols Kaster & Anderson PLLP, David Einer Schlesinger, Nichols Kaster PLLP, Minneapolis, MN, for Plaintiff.

Dana Lauren Hooper, Greenberg Traurig LLP, Phoenix, AZ, James N. Boudreau, Greenberg Traurig LLP, Philadelphia, PA, for Defendant.

## ORDER

DIANE J. HUMETEWA, District Judge.

The named plaintiff, Christine Villarreal, alleges, on behalf of herself and all others similarly situated, that defendant Caremark LLC willfully violated the Fair Labor Standards Act of 1983, as amended, 29 U.S.C. § 201 et seq. ("FSLA"), by failing to pay overtime to certain of its employees. Pending before the Court is plaintiff Villarreal's "Motion for Conditional Certification and Distribution of Judicial Notice" (Doc. 36).[1] Defendant Caremark has filed a Response (Doc. 42) and plaintiff Villarreal has filed a Reply (Doc. 44).

## I. Background

Caremark "provides pharmaceutical health care services and products to consumers nationwide[,]" with employees in 45 states within the United States. First Amended Complaint ("FAC") (Doc. 26) at 2, (¶¶ 5–6). Plaintiff Villarreal is a Caremark employee at its Scottsdale, Arizona office. (Id. at 3, ¶¶ 7–8). Prior to the end of 2013, Caremark had variously referred to Ms. Villarreal as a "Client Benefits Analyst" and "Benefits Specialist." (Id. at 3,

¶ 7). At the end of 2013, however, Caremark changed her job title to "Coding Consultant[.]" (Id.). Regardless of her title, according to Ms. Villarreal, her "job duties have remained consistent" during the relevant time frame. (Id.)

Ms. Villarreal alleges that Caremark informed her that effective March 30, 2014, "it reclassified [her] position[ ] to non-exempt[.]" (Id. at 4, ¶ 15). After being reclassified as non-exempt, Caremark informed Ms. Villarreal that it would pay her overtime for working more than 40 hours in a workweek. (Id.) Prior to that reclassification, plaintiff Villarreal alleges that Caremark "improperly classified" her and "uniformly misrepresented to" her that she was an exempt employee under the FLSA, and thus ineligible for overtime compensation. (Id. at 4, ¶ 14; and 5, ¶¶ 20 and 25). While classified as an exempt employee, Ms. Villarreal "routinely worked over … 40[ ] hours in a workweek[,]" but was "not compensated by [Caremark] with overtime pay for the overtime hours [she] worked." (Id. at 4, ¶ 16).

Plaintiff Villarreal is moving for conditional certification of a collective class consisting of "all persons who worked as Coding Consultants, Client Benefits Analysts, Benefits Specialists[2] and in other positions with a similar job title and/or job duties for Defendant, in the Employer Group or Health Plan Client Services Team, at any time from three years prior to the issuance of notice until March 30, 2014." Mot. (Doc. 36 at 5:8–12) (emphasis omitted) (footnote added). Caremark opposes such certification essentially because from its

---

1. In its discretion the court denies the parties' request for oral argument as it would not aid the decisional process. See Fed.R.Civ.P. 78(b); Partridge v. Reich, 141 F.3d 920, 926 (9th Cir.1998).

2. Plaintiff collectively refers to these various titles as " 'Benefits Analysts[,]' " and so, too, will this Court, but for the sake of brevity only. See Mot. (Doc. 36) at 6:16.

perspective, plaintiff Villarreal and the putative opt-in plaintiffs are not similarly situated.

## II. Conditional Class Certification

### A. Legal Standard

An individual may bring a suit under the FLSA. *See* 29 U.S.C. § 216(b), *ruled unconstitutional on other grounds by Alden v. Maine,* 527 U.S. 706, 712, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). In addition, "[a] party may bring a collective action under the FLSA on behalf of other 'similarly situated' employees[ ]" to recover, among other things, unpaid overtime wages. *See Colson v. Avnet, Inc.,* 687 F.Supp.2d 914, 924 (D.Ariz.2010) (citing, *inter alia,* 29 U.S.C. § 216(b); *Hoffmann–La Roche v. Sperling,* 493 U.S. 165, 168–69, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). " 'The district court has discretion to determine whether a collective action is appropriate.' " *Id.* at 925 (quoting *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 481 (E.D.Cal.2006)) (citing *Leuthold v. Destination Am., Inc.,* 224 F.R.D. 462, 466 (N.D.Cal.2004)). "The sole consequence of conditional certification is the 'sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court, § 216(b).' " *Benedict v. Hewlett–Packard Co.,* 2014 WL 587135, at *5 n. 8 (N.D.Cal. Feb. 13, 2014) (quoting *Genesis Healthcare Corp. v. Symczyk,* —— U.S. ——, 133 S.Ct. 1523, 185 L.Ed.2d 636 (2013)). " 'The action [then] proceeds as a representative action throughout discovery.' " *Juvera v. Salcido,* 294 F.R.D. 516, 519–520 (D.Ariz.2013) (quoting *Hipp v.*

*Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1217 (11th Cir.2001)).

To certify an FLSA class action, a court must determine whether plaintiffs and the potential opt-in members are "similarly situated." 29 U.S.C. § 216(b). "The FLSA does not define 'similarly situated' and the Ninth Circuit Court of Appeals has not construed it." *Id.* at 519; *see also Sliger v. Prospect Mortg., LLC,* 2011 WL 3747947, at *2 (E.D.Cal. Aug. 24, 2011) ("The FLS does not define 'similarly situated,' and the Supreme Court and the Ninth Circuit still have not interpreted the term.") "Courts have taken three approaches to determine whether plaintiffs are 'similarly situated' for purposes of FLSA collective actions: (1) a two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre–1966 version of Rule 23 for 'spurious' class actions." *Id.* (internal quotation marks and citation omitted). As earlier noted by this Court, " '[t]he majority of courts,' including those within the District of Arizona, have 'adopted the two-tiered approach[ ]' in deciding whether to grant FSLA collection action status." *Villarreal v. Caremark LLC,* 2014 WL 4247730, at *3 (D.Ariz. Aug. 21, 2014) (citing *Anderson v. Ziprealty, Inc.,* 2013 WL 1882370, at *2 (D.Ariz. May 3, 2013) (citing cases)); *Barrera v. U.S. Airways Group, Inc.,* 2013 WL 4654567, at *2 (D.Ariz. Aug. 30, 2013) (same); *Stickle [v. SCI Western Market Support Center, L.P.],* 2009 WL 3241790, at *2 [ (D.Ariz. Sept. 30, 2009) ] (same).[3] Now, when squarely confronted

---

3. Although the Ninth Circuit Court of Appeals has yet to address the issue of which approach to take in determining whether plaintiffs are "similarly situated" within the meaning of section 216(b), "[u]se of this two-tiered approach has been affirmed by five United States Courts of Appeals." *See Benedict v. Hewlett–Packard Co.,* 2014 WL 587135, at *5 n. 7 (N.D.Cal. Feb. 13, 2014) (citing *White v. Baptist Memorial Health Care Corp.,* 699 F.3d 869, 877 (6th Cir.2012); *Myers v. Hertz Corp.,* 624 F.3d 537, 554–55 (2d Cir.2010); *Sandoz*

with the issue of whether to conditionally certify a class in this case, the Court, as it previously indicated, will employ that two-tiered approach. *See id.* at \*4.

■ " 'At this first stage, the court require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.' " *Villarreal*, 2014 WL 4247730, at \*3 (quoting *Stickle*, 2009 WL 3241790, at \*2) (internal quotation marks and citations omitted). "Plaintiffs' allegations need neither be strong [n]or conclusive." *Colson*, 687 F.Supp.2d at 926 (internal quotation marks and citation omitted). " 'All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA.' " *Hart v. U.S. Bank NA*, 2013 WL 5965637, at \*2 (D.Ariz. Nov. 8, 2013) (quoting *Wertheim v. State of Arizona*, 1993 WL 603552, at \*1 (D.Ariz. Sept. 30, 1993) (citing *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F.Supp.2d 1053, 1071 (N.D.Cal. 2007))). What is more, " '[p]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members.' " *Juvera*, 294 F.R.D. at 520 (quoting *Hipp*, 252 F.3d at 1217). Likewise, "[t]he court must only be satisfied that a 'reasonable basis' exists for plaintiffs' claims of class wide injury." *Bollinger v. Residential Capital, LLC*, 761 F.Supp.2d 1114, 1119 (W.D.Wash.2011) (quoting *Khadera v. ABM Industries Incorporated*, 701 F.Supp.2d 1190, 1194 (W.D.Wash.2010) (citing *Hipp*, 252 F.3d at 1218)).

■ As can be seen, at this initial, so-called notice stage, a plaintiff's burden "is low." *Villarreal*, 2014 WL 4247730, at \*3 (citing, *inter alia*, *Wellens v. Daiichi Sankyo Inc.*, 2014 WL 1422979, at \*2 (N.D.Cal. April 11, 2014) (internal quotation marks and citations omitted) ("[S]ome court have held that the plaintiff bears a very light burden in substantiating allegations at this [notice] stage.")) "The Court uses a fairly lenient standard because the Court does not have much evidence[ ]" in that ordinarily, as here, no discovery has been conducted yet. *See Juvera*, 294 F.R.D. at 520 (citing *Hipp*, 252 F.3d at 1217–1218) (other citation omitted); *see also Colson*, 687 F.Supp.2d at 926 (citations omitted) ("Courts recognize that collective action notification normally occurs before the Parties have had the chance to engage in extensive fact discovery.") That it why the Court's role is fairly circumscribed at this juncture. " 'It is not the Court's role to resolve factual disputes ... or ... decide substantive issues going to the ultimate merits ... at the preliminary certification stage of an FLSA collective action.' " *Colson*, 687 F.Supp.2d at 926 (internal quotation marks and citations omitted). Thus, "[w]hile conditional certification at the first stage is by no means automatic, ... '[g]iven this light burden, motions to conditionally certify a class for notification purposes are typically granted.' " *Id.* at 925 (internal quotation marks and citations omitted).

■ At the second-tier, "once discovery has produced sufficient information regarding the nature of the claims, ... the Court then reevaluates, usually prompted by a motion for decertification, the 'similarly situated' question[.]" *Juvera*, 294 F.R.D. at 520 (citing *Hipp*, 252 F.3d at

*v. Cingular Wireless LLC*, 553 F.3d 913, 915 n. 2 (5th Cir.2008); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir.

2008); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir.2001)).

1217–1218). "This determination, under a stricter standard, is based on much more information, which makes a factual determination possible." *Id.* (citing *Hipp,* 252 F.3d at 1218) (other citation omitted). This second step involves a "multi-factored test[.]" *Bollinger,* 761 F.Supp.2d at 1119. These factors "includ[e] the specific employment conditions and duties of the individual plaintiffs, any defenses asserted by or available to the defendant which appear to be individual to each plaintiff, fairness and procedural considerations, and whether the plaintiffs made any required filings before instituting suit." *Troy v. Kehe Food Distributors, Inc.,* 276 F.R.D. 642, 649 (W.D.Wash.2011) (citing *Thiessen,* 267 F.3d at 1103) (other citation and internal quotation marks omitted).

### B. Analysis

▮ In support of her motion, besides her own declaration, plaintiff Villarreal is relying upon the declarations of five other current or former Caremark employees.[4] Opposing certification, Caremark provides declarations from its Senior Director, Human Resources; a Client Benefits Manager in its Scottsdale, Arizona office; and a Client Benefits Manager in its Irving, Texas office. Plaintiff Villarreal asserts that the Court "should follow the ample precedent" and "ignore this evidence." Reply (Doc. 44) at 3:3. Ms. Villarreal reasons that the Court should disregard such evidence because the statute of limitations runs on the putative class members until each files their own consent form. As a result, Ms. Villarreal does not have the opportunity to conduct discovery to respond to Caremark's argument, made through its declarants, that there are differences between plaintiff Villarreal and those whom she is claiming are similarly situated to her.

As Plaintiff Villarreal is quick to note, previously this Court recognized that "'some courts have declined to consider evidence offered by defendants in opposition to a plaintiffs motion for conditional class certification.'" *Villarreal,* 2014 WL 4247730, at *4 (quoting *Wellens,* 2014 WL 1422979, at *2 (citing, *inter alia, Sanchez v. Sephora USA, Inc.,* . . . 2012 WL 2945753, at *4 (N.D.Cal. July 18, 2012) ("[F]ederal courts are in agreement that evidence from the employer is not germane at the first stage of the certification process, which is focused simply on whether notice should be disseminated to potential claimants."))). From even a quick perusal of Caremark's declarations, their purported significance is obvious. Caremark is relying upon them in an attempt to show "disparate factual and employment settings of the individual plaintiffs." *See Kress v. PricewaterhouseCoopers, LLP,* 263 F.R.D. 623, 628 (E.D.Cal.2009) (internal quotation marks and citations omitted). Given that Caremark's declarations pertain to the second, and not the first tier of conditional class certification, this Court declines to consider them at this stage. *See Benedict,* 2014 WL 587135, at *12 n. 33 ("The Court further notes that it need not even consider HP's evidence at the notice-stage, as various courts in this Circuit have held.") (citing, *inter alia, Luque v. AT & T Corp.,* 2010 WL 4807088, at *5 (N.D.Cal. Nov. 19, 2010) (disregarding thirty declarations submitted by defendants in opposition to motion for conditional certification[,] stressing that "[c]ourts *need not even consider* evidence provided by defendants at this [notice] stage[ ]"); *Kress,* 263 F.R.D. at 628 ("In determining whether plaintiffs have met this standard, courts

---

4. To date, six putative plaintiffs have filed consent forms, *see* Docs. 14, 24, 27, 30, 41, and 46, one of whom, Julia Cloy, has also filed a declaration in support of this motion.

need not consider evidence provided by defendants.")).

Declining to consider Caremark's declarations asserting that there are differences between Plaintiff Villarreal and the putative class members is consistent with the view "that 'the question at this stage is not whose evidence regarding commonality is more believable, but simply whether plaintiffs have made an adequate threshold showing' that there are substantially similar putative class members." *See Benedict,* 2014 WL 587135, at *12 (quoting *Flores,* 2013 WL 2468362, at *7). It also is noteworthy that "[t]he fact that a defendant submits competing declarations will *not* as a general rule preclude conditional certification." *Harris v. Vector Marketing Corp.,* 716 F.Supp.2d 835, 838 (N.D.Cal. 2010) (citing *Hipp,* 252 F.3d at 1219) (emphasis added); *see also Lewis v. Wells Fargo & Co.,* 669 F.Supp.2d 1124, 1128 (N.D.Cal.2009) (internal quotation marks and citation omitted) (where plaintiffs met their burden at the notice state, the Court did not consider Defendant's fifty-four declarations, even if "[i]t may be true that the evidence will later negate plaintiffs' claims[ ]"); *Williams v. U.S. Bank Nat. Ass'n,* 290 F.R.D. 600, 613 (E.D.Cal.2013) ("[T]he cases indicate [it] is not appropriate . . . to consider contradictory evidence at th[e] [notice] stage[.]")

This holding should not be construed in any way as limiting Caremark's proof at the second stage of class certification. "[T]he Court will closely consider "the disparate factual and employment settings of the individual plaintiffs" if and when [Caremark] makes a motion to decertify, as that fact-specific analysis is appropriate for the second-stage." *See Benedict,* 2014 WL 587135, at *2 (quoting *Flores v. Velocity Exp., Inc.,* 2013 WL 2468362, at *7

(N.D.Cal. June 7, 2013)) (citing *Camp v. Progressive Corp.,* 2002 WL 31496661, at *4 (E.D.La. Nov. 8, 2002)) (holding that "the existence of some variations between potential claimants is *not* determinative of lack of similarity at the notice-stage.") (emphasis in original) (footnotes omitted).

■ As mentioned at the outset, plaintiff Villarreal is moving for conditional certification of a collective class comprised of "all persons who worked as Coding Consultants, Client Benefits Analysts, Benefits Specialists[5] and in other positions with similar job title and/or job duties for Defendant, in the Employer Group or Health Plan Client Services Team, at any time from three years prior to the issuance of notice until March 30, 2014." Mot. (Doc. 36) at 5:8–12 (emphasis omitted). Plaintiff Villarreal contends that conditional class certification is proper because she and the other Benefits Analysts are similarly situated. Purportedly, all of them: (1) "performed the same job duties[;] (2) were uniformly classified as 'exempt from overtime compensation'; (3) were paid in a similar manner[;] and (4) commonly worked unpaid overtime hours without proper overtime pay." Mot. (Doc. 36) at 6: 17–20.

Caremark disagrees, first arguing that there are numerous factual differences precluding conditional class certification. Caremark notes that plaintiff Villarreal and the putative opt-in plaintiffs are from "two Caremark divisions, six Caremark offices," and "no fewer than three separate and distinct job positions." Resp. (Doc. 42) at 1: 21–22. Caremark further explains that its Employer and Health Plan departments had "three different kinds of Client Benefits employees during the timeframe[.]" (*Id.* at 3:1–2) (footnote and cita-

---

5. Plaintiff collectively refers to these various titles as " 'Benefits Analysts[.]' " Mot. (36) at 6:16. So too will this Court, but for the sake of brevity *only.*

tion omitted). Not only that, according to Caremark, "[w]hat employees did in the Employer department differed significantly from the Health Plan department." (*Id.* at 4:4–5). Caremark also maintains that it "did not uniformly classify Client Benefits employees[.]" (*Id.* at 6:4) (emphasis omitted).

Second, Caremark argues that plaintiff Villarreal has not met her burden of "identify[ing] a single common illegal decision, policy or plan[,]" so as to warrant conditional class certification. (*Id.* at 7:26). In making this argument, Caremark stresses that "an employer's uniform classification decision by itself cannot support a similarly situated finding." (*Id.* at 8:9–10) (citations omitted). Then, challenging the competency and sufficiency of plaintiff Villarreal's proof, Caremark asserts that her alleged similarities "do not even span the entire putative group, let alone wholly bind them together." (*Id.* at 11:13–14). Finally, Caremark contends that conditional class certification is not proper because a collective action would be unmanageable.

Mindful of the lenient standard, and its limited role at this juncture, the Court finds that Plaintiff has met her burden at this first, notice stage. To support her motion, besides her own declaration, plaintiff Villarreal is relying upon declarations from three other current employees, Lisa Savosik, Janet Yurkovich, and from two former Caremark employees, Anthony Cruz and Julia Cloy.[6] With the exception of Cloy, these declarants have all worked at Caremark's Scottsdale, Arizona office. Ms. Cloy is a former employee at Caremark's Irving, Texas office. Additionally, with her reply Plaintiff includes the declaration of Alien Kue, a current employee at Caremark's Lincoln, Rhode Island Office.

Ms. Cloy worked in Caremark's "Employer Group[,]" whose "clients were large employers who self-administered their health insurance plans." Cloy Decl'n (Doc. 36–3), at 16; ¶ 5. The other declarants each worked on Caremark's "Health Plan Client Services Team[,]" whose "clients were large health insurance plans." *See, e.g.,* Villarreal Decl'n (Doc. 36–3) at 12, ¶¶ 2 and 6; Cruz Decl'n (Doc. 36–3) at 20, ¶¶ 2 and 6; Savosik Decl'n (Doc. 36–3) at 24, ¶¶ 2 and 6. In terms of their job titles, plaintiff Villarreal and the declarants were variously referred to as "Coding Consultant[s][,] ... 'Client Benefits Analyst[s]' and ... 'Benefits Specialist[s][.]' " *See, e.g.,* Villarreal Decl'n (Doc. 36–3) at 12, ¶ 21; Cloy Decl'n (Doc. 36–3) at 16, ¶ 2. Despite those differences in titles, Caremark has only one "Position Description" for its the "Position Title: Analyst–Client Benefits[.]" Broome Decl'n, exh. 2 (Doc. 36–3) at 8. Among the "essential functions" of that position is "[e]xposure and flexibility to support various market segments." (*Id.*) What is more, that position description pertains to "*All* Benefit locations[.]" (*Id.* at 8) (emphasis added). In any event, the "basic job duties" for all of these individuals "stayed the same throughout [their] employment." Villarreal Decl'n (Doc. 36–3) at 12, ¶¶ 2–3; Cruz Decl'n (Doc. 36–3) at 20, ¶¶ 2–3; Savosik Decl'n (Doc. 36–3) at 24, ¶¶ 2–3; Yurkovich Decl'n (Doc. 36–3) at 28, ¶¶ 2–3; Cloy Decl'n (Doc. 36–3) at 16, ¶¶ 2–3; and Kue Decl'n (Doc. 45) at 2, ¶¶ 2–3.

Each performed "prescription benefits coding" and "entered data and information into the database based on parameters set by Caremark's clients." Villarreal Decl'n (Doc. 36–3) at 12, ¶ 6; Cruz Decl'n (Doc.

---

6. Ms. Cloy is one of the six putative plaintiffs who have already filed their consent forms.

*See* Docs. 14, 24, 27, 30, 41, and 46.

36–3) at 20, ¶ 6; Savosik Decl'n (Doc. 36–3) at 24, ¶ 6; Cloy Decl'n (Doc. 36–3) at 16, ¶ 5; Yurkovich Decl'n (Doc. 36–3) at 28, ¶ 5; Kue Decl'n (Doc. 45) at 2, ¶ 6. Each did so "under very strict timelines[ ]" in that before any relevant changes to a health plan "could go 'live' in the pharmacies[,]" the declarants' coding projects had to be completed. Villarreal Decl'n (Doc. 36–3) at 12, ¶ 7; Cruz Decl'n (Doc. 36–3) at 20, ¶ 7; Savosik Decl'n (Doc. 36–3) at 24, ¶ 7; Yurkovich Decl'n (Doc. 36–3) at 28, ¶ 6; Cloy Decl'n (Doc. 36–3) at 16, ¶ 6; Kue Decl'n (Doc. 45) at 2, ¶ 7. The data provided by the declarants "told pharmacies' point of sale computers how much to charge for a drug under the applicable health insurance plan." *Id.* According to these declarants, "[t]he strict deadlines for these products le[ ]d to large amounts of overtime." (*Id.*)

Furthermore, while coding, each declarant did so "under parameters set by Caremark's clients." Villarreal Decl'n (Doc. 36–3) at 12, ¶ 8; Cloy Decl'n (Doc. 36–3) at 16, ¶ 7; Cruz Decl'n (Doc. 36–3) at 20, ¶ 8; Kue Decl'n (Doc. 45) at 2, ¶ 8; Savosik Decl'n (Doc. 36–3) at 24, ¶ 8; Yurkovich Decl'n (Doc. 36–3) at 28, ¶ 7. None of the declarants had "the authority to determine which drugs would be covered by the health insurance plan or which parameters should be used." (*Id.*) Likewise, none of the declarants had the "authority to deviate from the CRD [Client Request Document] without specific instructions to do so." (*Id.*)

The declarants uniformly state that they were paid a salary, with no overtime even though they "regularly worked over 40 hours in a week[.]" *See, e.g.,* Villarreal Decl'n (Doc. 36–3) at 12, ¶ 4; Cloy Decl'n (Doc. 36–3) at 16, ¶ 4; Kue Decl'n (Doc. 45) at 2, ¶ 4. Except for Ms. Cloy, who no longer worked for Caremark by March 30, 2014, and Ms. Yurkovich, each of the other declarants state that on that date, Caremark changed their status from a salaried employed "to an hourly employee and began paying overtime pay for overtime hours." *See, e.g.,* Villarreal Decl'n (Doc. 36–3), at 12, ¶ 5; Cruz Decl'n (Doc. 36–3) at 20, ¶ 5; Savosik Decl'n (Doc. 36–3) at 24, ¶ 5. Despite that change from a salaried to an hourly employee, the declarants' "job duties remained the same[.]" (*Id.*) But, they were not paid "back pay for overtime hours ... worked prior to th[at] change." *See, e.g.,* Villarreal Decl'n (Doc. 36–3) at 12, ¶ 5; Cruz Decl'n (Doc. 36–3) at 20, ¶ 5.

These declarations establish that regardless of geographic location, assigned work group, or title, Plaintiff Villarreal and the putative opt-in plaintiffs are similarly situated. There is an "identifiable factual or legal nexus bind[ing]" them together in terms of their job duties, manner of pay, and classification as exempt from overtime. *See Hart,* 2013 WL 5965637, at *2 (internal quotation marks and citations omitted). As to the latter, the Court is keenly aware, as Caremark asserts, "that classification cannot be the *only* basis for collective action certification[.]" *See Bollinger,* 761 F.Supp.2d at 1120 (citations omitted) (emphasis in original). As just shown, however, classification is not the only basis for finding that Plaintiff Villarreal and the putative opt-in plaintiffs are similarly situated. Furthermore, classification "certainly can be considered for the purposes of determining whether plaintiffs are 'similarly situated' to the class they seek to represent." *Id.* It bears repeating that a named plaintiff "need not conclusively establish that collective resolution is proper, because a defendant will be free to revisit this issue at the close of discovery." *Kress,* 263 F.R.D. at 630.

█ Caremark's final argument against conditional class certification per-

tains to manageability. Caremark asserts that a collective action would be "unmanageable because common proof cannot resolve the classification decisions at issue." Resp. (Doc. 42) at (11:19–20) (emphasis omitted). More specifically, Caremark maintains that "the exemption determination necessarily turns on a fact-specific, individualized inquiry into each plaintiff's day-today activities." (*Id.* at 13:8–9) (citations omitted). This argument is premature in that manageability and such fact specific inquiries are within the province of the second tier of conditional class certification, not the first. *See, e.g., Troy,* 276 F.R.D. at 649 ("fairness and procedural considerations" are addressed at second tier).

To conclude, for the reasons set forth herein, the Court finds that plaintiff Villarreal has sufficiently demonstrated that certain employees are similarly situated to her, thus warranting conditional certification of this collective FLSA action for notice purposes.

### III. Form of Collective Action Notice

Because it is granting conditional class certification, and because Plaintiff Villarreal also is seeking distribution of judicial notice, next, the Court must determine the form and content of that notice. Ms. Villarreal has provided a proposed Notice and proposed Plaintiff Consent Form. *See* Brome Decl'n (Doc. 36–2), exh. 1 thereto at 4–6, Caremark raises a number of objections, which this Court will address seriatim.

#### A. Legal Standard

 Collective actions allow aggrieved employees "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann–La Roche,* 493 U.S. at 170, 110 S.Ct. 482 (discussing collective action provision, 29 U.S.C.

§ 216(b), in context of ADEA claims). "The judicial system also benefits from the 'efficient resolution in one proceeding of common issues of law and fact arising from the same' unlawful activity." *Benedict,* 2014 WL 587135, at *5 n. 5 (quoting *Hoffmann–La Roche,* 493 U.S. at 170, 110 S.Ct. 482). "Those benefits may only be realized through 'accurate and timely notice concerning the pendency of the collective action, so that [employees] can make informed decisions about whether to participate.'" *Id.; see also McElmurry v. U.S. Bank N.A.,* 495 F.3d 1136, 1139 (9th Cir.2007). Notice "serve[s] the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffmann–La Roche,* 493 U.S. at 172, 110 S.Ct. 482. District courts have broad discretion concerning the details of a notice under 29 U.S.C. § 216(b). *Hoffmann–La Roche,* 493 U.S. at 170, 110 S.Ct. 482 ("declin[ing] to examine the terms of notice" and "confirm[ing] the existence of the trial court's discretion, not the details of its exercise[ ]").

#### B. Analysis

##### 1. Statement of Caremark's Position

Caremark describes plaintiff Villarreal's proposed notice as "a one-sided recitation of the pending lawsuit ... [that] says nothing of Caremark's position." Resp. (Doc. 42) at 14:15–16 (citation omitted). Yet, Caremark's Response does not include a proposed position statement. Moreover, the proposed notice includes, in pertinent part, the following language:

> The Court has not decided whether Caremark did anything wrong.
>
> * * *
>
> Caremark denies plaintiff's claims and denies that the persons receiving this notice are eligible for or entitled to receive overtime pay.

Brome Decl'n, exh. 1 thereto (Doc. 36–3) at 4. In light of the foregoing, the Court finds that the Proposed Notice adequately apprises any putative opt-in plaintiff of Caremark's position. Hence, there is no need to further delay this action by allowing Caremark to submit its proposed position statement at this late date.

### 2. Purported Solicitation of Opt-in Plaintiffs

Ms. Villarreal's proposed Plaintiff Consent Form contains the following statement: "If this case does not proceed collectively, then I also consent to join any subsequent action to assert these claims against Caremark, LLC." (*Id.* at 6). Caremark objects on the basis that this statement impermissibly solicits plaintiffs for subsequent lawsuits. In her Reply, Ms. Villarreal expressly agrees to omit the foregoing statement from her proposed Plaintiff Consent Form. Reply (Doc. 44) at 9:27–28, n. 5. Therefore, plaintiff Villarreal shall modify that Consent Form accordingly.

### 3. Opt-in Time Frame

Ms. Villarreal's proposed Notice also includes a 90 day opt-in period. Caremark objects to that time frame, asserting that 60 days is the "increasingly the norm" for the opt-in period. Resp. (Doc. 42) at 15:12 (citing cases). As plaintiff Villarreal herself realizes, there is a split of authority among district courts in the Ninth Circuit as to whether a 60 or a 90 day notice period is required. *See U.S. Bank Nat. Ass'n,* 290 F.R.D. at 614 (collecting classes). The Court agrees with Caremark that in this particular case, 60 days is a sufficient opt-in period. Therefore, Plaintiff's proposed Notice shall be modified accordingly. Further, this 60 day period "will run from the time the notice is sent, rather than from when it is received." *See Barrera,* 2013 WL 4654567, at *9 (cit-

ing *Taylor v. Autozone, Inc.,* 2011 WL 2038514, at * 6 (D.Ariz. May 24, 2011)) (ordering that "potential plaintiffs may 'opt-in' to the collective action within sixty (60) days of the mailing of the notice by sending the consent to sue form to plaintiff's counsel")[, *clarified on other grounds on denial of reconsideration,* 2011 WL 2357652 (D.Ariz. June 14, 2011) ].

### 4. Manner of Delivery

The parties disagree as to the manner in which notice should be delivered. "The best way to ensure receipt of notice," Ms. Villarreal posits, is to use both the United States Postal Service ("USPS") and electronic delivery. Mot. (Doc. 36) at 18:14–15 (citations omitted). Plaintiff Villarreal is seeking delivery by both means claiming that "[a]s [USPS] cuts hours at post offices, explores closing thousands of post offices, and seeks to eliminate Saturday delivery, email communication has become a fixture in our society." (*Id.* at 18:11–14). To the contrary, Caremark's position is that "first class mail is the preferred and only method to be used for class notice." Resp. (Doc. 42) at 15:19–20.

This Court finds unconvincing Ms. Villarreal's suggestion that notice by USPS via first class mail may be inadequate because the USPS is potentially unreliable. Therefore, plaintiff Villarreal's Notice must be provided by first class mail only. The Court does not authorize notice by electronic delivery.

### 5. Reminder Postcards

Plaintiff Villarreal further requests that she be allowed to send a reminder postcard during the notice period. Caremark asserts that reminder postcards are unnecessary because they "tend to . . . stir up litigation and inappropriately encourage putative plaintiffs to join a suit." Resp. (Doc. 42) at 16:12–13 (citing cases). Plaintiff Villarreal counters that a remind-

er postcard "is especially important if the Court denies [her] request for e-mail distribution." Reply (Doc. 44) at 10:13–14 (citation omitted). Given the reduction in the requested opt-in period from 90 to 60 days, the Court finds that sending reminder postcards is unnecessary.

### 6. Production of Contact Information

■ To facilitate notice, Plaintiff Villarreal is seeking to have this Court order Caremark to provide contact information for each of the putative opt-in plaintiffs, including partial social security numbers. *See* Mot. (doc. 36) at 16:15–19 (citation omitted) (listing 8 categories of requested contact information) If the Court refuses to order the production of partial social security numbers, Plaintiff Villarreal requests that the Court "order production of employee identification numbers of another [unspecified] unique identified that can be used to tie Opt–Ins to Defendant's records throughout the case." Reply (Doc. 44) at 11:13–15. Noting the "highly personal and private[ ]" nature of such information, Caremark objects to the production of private telephone numbers or social security numbers for any of the putative opt-in plaintiffs. Resp. (Doc. 42) at 17:4.

Caremark's position is well-taken. *See Taylor*, 2011 WL 2038514, at *5 ("in the interest of protecting class members' privacy, [court] [did] not order defendant to provide telephone numbers and social security numbers. Such information is sensitive, and putative class members may have provided personal data to defendant with the expectation of confidentiality.") (citing *Stickle*, 2009 WL 3241790, *7 (supplying "the phone numbers of thousands of Defendants' current and former employees seems like a needless intrusion into the privacy of these individuals and their families.... Similarly, Plaintiffs are not entitled to any social security num-

bers.") (citations omitted)). The Court therefore denies Ms. Villarreal's request that it order Caremark to provide the telephone and social security numbers for the putative opt-in plaintiffs.

### 7. Authorization

■ Lastly, the Court observes that Ms. Villarreal's proposed Notice includes this statement: "This Notice and its Content have been authorized by the United States District Court for the District of Arizona, the Honorable Diane Humetewa, U.S. District Judge." Brome Decl'n, exh. 1 thereto (Doc. 36–3) at 5 (emphasis omitted). To avoid the perception that this action has been judicially endorsed, Plaintiff shall revise this statement as follows: "This Notice and its Content has been authorized by the United States District Court for the District of Arizona in Case No. CV 14–00652–PHX–DJH." *See Barrera*, 2013 WL 4654567, at *10 (citation omitted) (requiring deletion of a statement that the case had been assigned to a particular judge "because it could be perceived as judicial endorsement of the action[ ]").

## IV. Conclusion

Accordingly, for the reasons set forth herein,

**IT IS ORDERED GRANTING** named plaintiff Christine Villarreal's *motion to conditionally certify a collective action (Doc. 36) under the FLSA, 29 U.S.C. § 216(b), of all persons who worked as Coding Consultants, Client Benefits Analysts, Benefits Specialists and in other positions with similar job title and/or job duties for defendant Caremark LLC, in the Employer Group or Health Plan Client Services Team, at any time from three years prior to the issuance of notice until March 30, 2014.

**IT IS FURTHER ORDERED** that within **ten (10) days** of the date of this

Order, defendant Caremark shall provide plaintiff Villarreal with a Microsoft Excel or compatible electronic importable list of all Coding Consultants, Client Benefits Analysts, Benefits Specialists, and employees in similar positions in the Employer Group or Health Plan Client Services Team, who are, or were, employed by Caremark at any time during the three years preceding this Court's order until March 30, 2014.[7] This list should include each putative class member's (1) name, (2) job title, (3) last known address, (4) dates of employment, and (5) location of employment.

**IT IS FURTHER ORDERED** that within **30 days** from the date of this Order, plaintiff Villarreal shall by first class mail provide Notice of this action and the Plaintiff Consent Form in the form of the proposed Notice and the proposed Plaintiff Consent Form attached as exhibit 1 (Doc. 36–3 at 4–6) to the declaration of Daniel S. Brome, except that the Notice and Consent Form shall be modified to fully comply with this Order; and

**IT IS FINALLY ORDERED** that within **five days** of this Order, plaintiff Villarreal shall file the Notice and the Plaintiff Consent form, both revised in accordance with this Order.

---

7. "[T]he Court's decision to give notice for the three year time period does not indicate a finding on willfulness." *See Hart*, 2013 WL 5965637, at *6 (footnote omitted).